ORIGINAL

LAW OFFICES OF MARK H. BIERMAN
Three New York Plaza, 14th flr.
New York, New York 10004
212-363-6960

Attorneys for Plaintiff
Richard Wolin

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

**RICHARD WOLIN,**

                Plaintiff,

        -v-

**THE NEW YORK CITY BOARD OF EDUCATION,
THE CITY OF NEW YORK, AND JOHN Q. ADAMS,
NEAL OPROMALLA , THOMAS W. HYLAND
VINCENT GRIPPO, THOMAS PENNELL AND
THERESA EUROPE Individually and as employees,
UNITED FEDERATION OF TEACHERS, and
MARVIN REISKIN, individually and as a representative.**

             Defendants.

----------------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT. E.D.N.Y.
★ MAY 2 8 2002 ★
BROOKLYN OFFICE

Index No.

**CV 02 3119**

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

SIFTON, J.
GO, M.J.

CITY OF N.Y. LAW DEPT.
OFFICE OF CORP. COUNSEL
COMMUNICATIONS SECTION
02 MAY 23 PM 2:41

NYC COMMISSION
ON HUMAN RIGHTS
LAW ENFORCEMENT BUREAU
2002 MAY 23 P 3:11

        Plaintiff Richard Wolin, residing at Brooklyn, New York, by his attorney,

Mark H. Bierman, Esq., complaining of defendants, the New York City Board of

Education, The City of New York,  John Q. Adams, Neal Opromalla , Thomas W.

Hyland, Vincent Grippo Thomas Pennell, Theresa Europe Individually and As

Employees, (collectively "Individual Defendants"), United Federation of Teachers  and

Marvin Reiskin ("Reiskin") hereby states:

1



## **NATURE OF ACTION**

1.      This action is brought to remedy claims of employment discrimination, pursuant to , the Americans with Disabilities Act (42 U.S.C.A. §§12112(a);12114(a)); the Rehabilitation Act (29 U.S.C.A. §§791 et seq.),  the New York State Human Rights Law, Executive Law §§ 290 et seq. (the "SHRL"); and the New York City Human Rights Law, Administrative Code of the City of New York §§ 8-101 et seq. (the "CHRL").

2.      This action is further brought to remedy claims of violations of Plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C.A. §§ 2601 et seq.

3. This action is further brought pursuant to the Civil Rights Act of 1866, 42 U.S.C.A. § 1981; the Civil Rights Act of 1871, 42 U.S.C.A. § 1983; and The Conspiracy to Obstruct Justice Act, 42 U.S.C.A. §1985, to remedy violations of rights to property and equal protection under the Fourteenth Amendment of the United States Constitution.

4.      This action is further brought to recover compensatory and punitive damages under state common law claims.

5.      Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief.

## **JURISDICTION AND VENUE**

6.      Plaintiff filed a timely notice of claim against the New York City Board of Education and the City of New York on  April 25, 2002.

2

7.    Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 19, 2002, complaining of the acts of discrimination alleged herein.  He received a Notice of Right to Sue from the EEOC on or about March 14, 2002.

8.    A copy of this Complaint was served upon the New York City Corporation Counsel and the Commission on Human Rights of the City of New York prior to the commencement of this action.

9.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(1), (3), (4) and 1391(b), 29 U.S.C.A 791 et seq. (Rehabilitation Act),  29 U.S.C.A. §2617 (FMLA), 42 U.S.C. §§ 1981, 1983, and 1985, 42 U.S.C.A. §§12101 et seq. (ADA). This Court has supplemental jurisdiction over Plaintiff's state, city and common law claims, pursuant to 28 U.S.C. § 1367.

10.    As the unlawful employment practices complained of herein occurred within, and defendants regularly do business within the Eastern District of New York, venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

11.    Prior to the commencement of this action, the plaintiff had duly complied with the provisions of the statutes in such cases made and provided as extended by the Order of the Supreme Court, Kings County (Hutcherson, J.) dated April 19, 2002, and in particular on April 25, 2002,  and more than thirty (30) days prior to the commencement of this action, had duly presented, served and filed a Notice of Claim and Intention to sue herein with the City of New York at its offices provided therefor in the Borough of Manhattan, City and State of New York and upon the Chief Administrator of the New York City Board of Education, for adjustment of damages sustained by the plaintiff

3

herein and upon which Plaintiff's state, city and common law claims are based, and thereafter, the said City of New York and New York City Board of Education for more than thirty (30) days before the commencement of this action, neglected and refused to make an adjustment of this action, neglected and refused to make an adjustment or payment on said claim, and said claim remains unadjusted although duly demanded, and that less than one year and ninety days has elapsed since the accrual of the common law causes of action herein set forth.

## PARTIES

12.   Plaintiff, **RICHARD WOLIN** ("Plaintiff") is a 57 year-old  man and resident of 1170 Ocean Parkway, Brooklyn, New York 11230.   Plaintiff began working as a teacher for defendant New York City Board of Education, in or about September of 1988.   Plaintiff was employed by the New York City Board of Education from September of 1988 until his employment was involuntarily terminated effective June 30, 2001.

13.   Defendant **CITY OF NEW YORK** (the "City") is a municipality chartered by the State of New York.

14.   Defendant **NEW YORK CITY BOARD OF EDUCATION** ("Board of Education") is a city agency that was organized and exists pursuant to Section 2552 of the New York State Education Law to manage, operate and control the educational affairs in the city school district and pursuant to Education Law Section 2590--g to determine all policies of the city district, to be the government or public employer of all

4

persons appointed or assigned by the city board or the community boards, and to be the government or public employer of all persons appointed or assigned by the city board and the community boards for purposes of Article Fourteen of the State Civil Service Law, and maintains its principal place of business at 110 Livingston Street, Brooklyn, New York.

15.    The City and the Board of Education each employ more than fifty employees.

16.    Defendants City and Board of Education are employers within the meaning of the ADA, the Rehabilitation Act, the ADEA, the FMLA, the Human Rights Law § 292(5) and the Administrative Code 8-102(5).   Upon information and belief, said employers supervised Plaintiff, controlled his working hours and assignments, and retained the right to terminate his employment.

17.    Defendant **JOHN Q. ADAMS** ("Adams"), is a natural person, and was at all times relevant to this action an employee of the City of New York and the Board of Education and acting under color of state law.   At all times relevant herein, Defendant Adams served as the Principal of Christa McAuliffe Intermediate School, public Intermediate School 187 (the "School"), located in School District 20 in the City of New York and is being sued in his individual capacity and his capacity as a supervisor employed by the Board of Education.

18.    Defendant **VINCENT GRIPPO** ("Grippo")  is a natural person,  and was at all times relevant to this action an employee of the City of New York and the Board of Education and acting under color of state law.   At all times relevant herein, Grippo

5

served as the Senior Superintendent of Community School District 20 and is being sued in his individual capacity and his capacity as a supervisor employed by the Board of Education.

19. Defendant **NEAL OPROMALLA** ("Opromalla") , is a natural person, and was at all times relevant to this action an employee of the City of New York and the Board of Education and acting under color of state law. At all times relevant herein, Opromalla served as the Special Assistant to the Superintendent of Community School District 20 and is being sued in his individual capacity and his capacity as a supervisor employed by the Board of Education.

20. Defendant **THOMAS W. HYLAND** ("Hyland") is a natural person, and was at all times relevant to this action an employee of the City of New York and the Board of Education and acting under color of state law. At all times relevant herein, Hyland served as the Deputy Director of the Office of the Chancellor of the Board of Education of the City of New York and is being sued in his individual capacity and his capacity as a supervisor employed by the Board of Education.

21. Defendant , **THOMAS PENNELL** ("Pennell") is a natural person, and was at all times relevant to this action an employee of the City of New York and the Board of Education and acting under color of state law. At all times relevant herein, Pennell served as the Chief Investigator of the Special Commissioner of Investigation for the New York City School District and is being sued in his individual capacity and his capacity as a supervisor employed by the Board of Education.

22. Defendant, **THERESA EUROPE** ("Europe") is a natural person, and was at

6

all times relevant to this action an employee of the City of New York and the Board of Education and acting under color of state law.   At all times relevant herein, Europe served as the  Director of Office of Special Investigations and is being sued in her individual capacity and her capacity as a supervisor employed by the Board of Education.

23. Defendants Adams, Opromalla, Hyland, Grippo, Pennell and Europe are collectively referred to as the "Individual Defendants".

24. Defendant **UNITED FEDERATION OF TEACHERS** ("UFT") is a union of employees organized and existing under the laws of the state of New York and maintains its principal offices at 260 Park Avenue South, New York, NY.

25. Defendant **MARVIN REISKIN** is a natural person and an employee and representative of the UFT assigned to represent union members within the school district in which Plaintiff was employed.

## **FACTUAL ALLEGATIONS**

26.  Plaintiff was employed by the Board of Education of the City of New York (the "Board of Education") for approximately ten years. Plaintiff was assigned to the Christa McAuliffe Intermediate School, Intermediate School 187 (the "School"), District 20,  where he consistently received satisfactory ratings.

27. On or about January 6, 2001, Plaintiff was in a car accident wherein he experienced serious injuries, including injuries to his head and body.

28. On January 7, 2001, Plaintiff telephoned his School's principal, John Q. Adams, and advised him of the accident and that he would be out of work for an

7

extended period.

29. Adams expressed his sympathy for what had occurred and acknowledged that Plaintiff would be out for an extended period and that a leave would be taken.

30. Shortly thereafter, Plaintiff, upon Adams' suggestion, spoke with Merry Ruberto, the individual in charge of payroll and assistant to the school principal, about the accident, and discussed with Ms. Ruberto his need for a leave.

31. On January 23, 2001, Plaintiff was advised in writing by the School, that, after conferring with the District 20 Office (District Office"), it was determined that:

> **You must take a FEMLA Leave commencing 01/05/01.** Please fill out the forms I have enclosed and have your doctor complete the medical portion. You are entitled to a 12 week period of health coverage only. (Emphasis supplied)

32. In accordance with the instructions of the School, Plaintiff returned to the school the forms supplied to him in the letter of January 23, requesting leave under the Family Medical Leave Act ("FMLA") that contained the certification of his treating physician. The physician estimated that the leave period required would be from January 6, 2001 to March 5, 2001, a period of approximately two months.

33. Plaintiff, although not well enough to return to work, decided that while on leave he would attempt to free himself from a long term drug dependency.

34. On January 21, 2001 Plaintiff entered a three week therapeutic drug treatment program.

35. Plaintiff continued on leave after completion of the three week treatment program since he had not yet fully recovered from the January 6 accident, and continued to experience pain and dizziness from the injuries that he had sustained in

8

that accident.

36. Plaintiff, at all relevant times herein, was a member of the UFT. On Friday, January 26, 2001, Plaintiff had a confidential telephone conversation with the Plaintiff's ("UFT") representative, Marvin Reiskin.

37. During that telephone conversation, Plaintiff advised Mr. Reiskin about his participation in the drug treatment program.

38. Plaintiff later discovered that the next Monday morning, January 29, 2001, the Board received an alleged "anonymous" communication purportedly reporting that Plaintiff had a drug dependency problem and was in a drug treatment facility.

39. As Plaintiff also later learned, by letter dated January 30, 2001 the Special Commissioner of Investigation for the New York City School District, by its Chief Investigator, Thomas Pennell, wrote to Ms. Theresa Europe, Director of Office of Special Investigations to inform her about the alleged information received concerning Plaintiff's treatment for drug dependency and to take action against Plaintiff.

40. Thereafter, Plaintiff was instructed to report to a physical examination that was to be conducted by the Board of Education on February 26, 2001.

41. After the examination, Plaintiff was instructed to report to the District Office to see District 20 Community Superintendent, Vincent Grippo.

42. On February 28, 2001, Plaintiff met with Grippo at the District 20 office. Grippo told Plaintiff that Plaintiff was being investigated without identifying the nature of the investigation.

43. Grippo told Plaintiff that he was not satisfied with the results of the February 26, 2001 examination and that Plaintiff was required to submit to another physical

9

examination by the Board of Education .

44. On February 26, 2001, Plaintiff was found fit to return to work, and did so. However, Plaintiff was instructed  to report to the District Office, not to the classroom.

45. Plaintiff was given no meaningful duties to perform at the District Office and was forced to spend his days doing nothing but sitting at the District Office during his work hours.

46. On March 27, 2001 Plaintiff appeared at the medical offices that he had been instructed to report to.

47. Plaintiff was surprised to learn that the office he had been sent to was the office of a  psychiatrist, Dr. Garner, of the offices of the Board of Education's Medical Bureau.

48. While waiting to see Dr. Garner, an office employee handed Plaintiff a copy of a "Complaint Form" dated January 29, 2001 from the Special Commissioner of Investigation for the New York City School District .

49. It was immediately before being seen by the Board of Education's psychiatrist that Plaintiff was confronted with that complaint form.

50. The complaint form referred to an alleged anonymous complaint that Plaintiff is a "heroin addict" and "is currently on sick leave while in a rehab program".

51. This "complaint" was made the very next business day after Plaintiff advised Reiskin, the UFT representative, that he was staying at a drug rehabilitation facility.

52. That same day, March 27, 2001, Plaintiff was found by the Board's doctors to be "Not Fit at present" with an indication that he was to be re-examined in three weeks.

53.  On April 17, 2001, Plaintiff met with the Board's psychiatrist, discussed the

10

January 6th car accident, provided her with a copy of the police accident report, and discussed his participation in the substance dependency treatment facility.

54. On April 17, 2001 Plaintiff was found fit by the psychiatrist to return to the classroom, to be re-evaluated in two months.

55. Plaintiff however was not permitted to return to the class room and instead was required to continue reporting to the District Office where he continued to be deprived of any meaningful duties.

56. On April 17, 2001 the medical review concluded that Plaintiff could return to work at that time, but that final determination of his status "will follow completion of ongoing evaluation".

57. On June 15, 2001 Plaintiff was again found "fit" to work.

58. The documents reveal that the Board of Education conducted its "investigation" in response to Plaintiff being in the drug treatment facility, and that both the principal as well as the District Office Superintendent and the Chancellor's office were aware of this fact prior to the time that the decision to terminate Plaintiff's employment was made.

59. Plaintiff was then told to appear on May 31, 2001 at the office of the Senior Superintendent of Community School District 20, Vincent Grippo.

60. As is reflected in Grippo's letter of June 19, 2001, the purpose of the meeting was to discuss the contents of the Special Investigators memorandum which contains the investigation of the alleged anonymous complaint concerning Plaintiff's attendance at a drug treatment facility.

61. The purpose of the May 31, 2001 meeting was to discuss the "OSI" report

11

that was the result of the alleged anonymous complaint regarding Plaintiff being in treatment for drug use.

62. At attendance at this meeting were Marvin Reiskin, the District 20 UFT Representative,  Neal Opromalla, the "Special Assistant to the Superintendent", and John Adams, the Principal of I.S. 187.

63. At the May 31 meeting, Plaintiff was for the first time given a copy of a Memorandum dated March 15, 2001 to Thomas W. Hyland, Deputy Director of the Office of the Chancellor of the Board of Education of the City of New York from a person identified as "Confidential Investigator" Anthony DeLeo.

64. The document consisted of the purported results of an investigation allegedly conducted by Mr. DeLeo at the request of the Board of Education based on an alleged "anonymous" complaint that Plaintiff may have a drug related problem in that Plaintiff was in a drug treatment facility.

65. One of the principal reasons for the meeting, and for the subsequent termination of Plaintiff was Plaintiff's past problem with drug dependency and for his having exercised his right to take a leave under the Family Medical Leave Act (29 U.S.C. 2601).

66. At the May 31 meeting, Plaintiff acknowledged  that he had attended a drug treatment facility and that he had had a drug dependency problem in the past.

67. However, Plaintiff made clear that his treatment had been successful as confirmed in the letter of the outpatient facility that Plaintiff was attending, addressed to the Board and dated June 12, 2001 which had been hand delivered.

68. By letter dated June 21, 2001, Plaintiff was informed that his position as a

12

teacher was being terminated, that he was being rated "unsatisfactory", and that he was being placed on the "Board's Ineligible Inquiry List" which would bar him from future employment with the New York City Board of Education.

69. Plaintiff's participation in the drug treatment program was a clear factor in the Board's decision to terminate Plaintiff, give him an "unsatisfactory" rating, and bar him from future work as a teacher in the New York City School system.

70. On information and belief, Defendants the Board of Education, the City , Adams, Opromalla, Hyland, Grippo, Pennell, Europe, UFT and Reiskin engaged in a concerted effort to cause Plaintiff's dismissal as teacher and to prevent him from working for the Board of Education in the future and otherwise deprive him of his ability to work in his chosen profession, on account of his disability.

71. At the time that Plaintiff took leave under the FMLA, he had not been informed that his employment would be terminated or that he would be given an unsatisfactory rating for any past absences.

72. In fact, when Plaintiff spoke with Mr. Adams shortly after the car accident occurred, Mr. Adams recognized that Plaintiff would have to take a leave as the result of the accident, and made no mention that any past absences would effect his rating or result in his dismissal.

73. In the past, Plaintiff had received satisfactory ratings and his employment had not been terminated despite similar numbers of absences when the FMLA days are excluded.

74. While the letter terminating Plaintiff's employment stated that Plaintiff had failed to supply medical documentation, in fact such documentation had been supplied

13

to the school shortly after the form was received by Plaintiff.

75. The form supplied by the School was completed by Dr. Ravindra Goyal, M.D., a doctor of Internal Medicine and Plaintiff's treating physician, on February 12, 2001, who gave a diagnosis of soft tissue injury and possible cerebral concussion.

76. Dr. Goyal estimated that the conditions duration would be from "1/6/01 to 3/5/01".

### FIRST CAUSE OF ACTION:
ADA, SHRL, CHRL(City of New York and Board of Education)

77. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 76 of this complaint with the same force and effect as if set forth herein.

78. Plaintiff was qualified to teach in the intermediate public schools of the City of New York and was duly licensed as a substitute teacher by the state of New York.

79. Plaintiff was otherwise qualified to perform the duties of his position.

80. Plaintiff was recovering or had recovered from a previous drug addiction prior to the time that Plaintiff's employment was terminated.

81. Plaintiff had a record of such drug addiction prior to the time that his employment was terminated by the Board of Education.

82. Plaintiff's previous long term drug addiction substantially limited one or more major life activities  while he was under the influence of the drugs, substantially and impairing and limiting his ability to walk and talk, substantially impairing and limiting his coordination and his ability to use his hands and perform manual tasks, substantially

14

impairing and limiting his cognitive functions, substantially impairing his ability to eat and sleep, and substantially impairing and limiting other major life activities or substantially limiting and impairing other activities that collectively constitute a major life activity.

83.  Plaintiff's impairment prevented or severely restricted him from doing activities that are of central importance to most people's daily lives.

84.  Defendants regarded Plaintiff as disabled as the result of his past drug addiction.

85. After Plaintiff obtained treatment for his drug dependency, and after returning from the FMLA leave, Plaintiff's absences were *de minimis*.

86. The absences cited as the basis for terminating Plaintiff's employment  were primarily those which occurred while Plaintiff was out on FMLA leave or as the result of his disability before he obtained treatment.

87. The Defendants knew of  Plaintiff's participation in the drug treatment program, and that Plaintiff  had successfully completed a supervised drug rehabilitation program, had otherwise been rehabilitated successfully, was participating in a supervised rehabilitation program and was recovering from his addiction.

88.  Plaintiff's past absences resulted from his disability.

89. On information and belief, other teachers who had similar numbers of absences (excluding Plaintiff's FMLA leave absence) were not terminated, rated as unsatisfactory or barred from further employment.

90. The Defendants knew that Plaintiff had successfully completed the treatment before he was fired, and yet relied on past absences which occurred before Plaintiff

attended the drug treatment program.

91. The Defendants unlawfully relied upon  events which occurred while Plaintiff was suffering from his disability.

92. Plaintiff's employment was terminated, he was given an unsatisfactory rating, and was placed him on the "ineligible list" for rehire, in violation of the Americans with Disabilities Act (42 USC12112(a);12114(a)), the New York State Human Rights Law ( "SHRL"),  New York Executive Law § 290, et seq., New York City's Human Rights Law (the "CHRL"), Administrative Code of the City of New York S 8-101, et seq.

93. Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

94. As the result of Defendants' City and Board of Education's discrimination against Plaintiff on the basis of his disability, his record of disability and/or their perception of his disability, Plaintiff has suffered and continues to suffer substantial losses, including, but not limited to, the loss of past and future earnings, bonuses, deferred compensation, pension benefits, health insurance benefits, and other employment benefits.

95. As a further result of Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendants.

96.  As a further result of Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, embarrassment, anguish,  and mental distress, and other incidental and consequential damages and expenses.

16

97. Plaintiff is also entitled to declaratory and injunctive relief removing any unsatisfactory rating and ineligibility for rehire assigned to him as the result of said Defendants' actions and reinstatement of his employment.

98. The conduct of Defendants City and Board of Education was shocking, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION
### (Rehabilitation Act) (City of New York and Board of Education)

99.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 98 of this complaint with the same force and effect as if set forth herein.

100. Defendants City and Board of Education are a recipients of Federal financial assistance.

101. Defendants City and Board of Education by their actions violated The Rehabilitation Act.

102. Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

103. As the result of Defendants' City and Board of Education's discrimination against Plaintiff on the basis of his disability, his record of disability and/or their perception of his disability, Plaintiff has suffered and continues to suffer substantial losses, including, but not limited to, the loss of past and future earnings, bonuses, deferred compensation, pension benefits, health insurance benefits, and other

17

employment benefits.

104. As a further result of Defendants' discriminatory actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendants.

105. As a further result of Defendants discriminatory actions, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, embarrassment, anguish, and mental distress, and other incidental and consequential damages and expenses.

106. Plaintiff is also entitled to declaratory and injunctive relief removing any unsatisfactory rating and ineligibility for rehire assigned to him as the result of said Defendants' actions and reinstatement of his employment.

107. The conduct of Defendants was shocking, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### THIRD CAUSE OF ACTION
(FMLA) (City of New York and Board of Education)

108. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 107 of this complaint with the same force and effect as if set forth herein.

109. On information and belief, the City and Board of Education each employed 50 or more employees for each working day during each of twenty or more calendar work weeks in the current and preceding calendar year, and are otherwise a covered

18

entities under the FMLA.

110. Plaintiff completed at least twelve months of employment with the City and Board of Education before his employment was terminated.

111. Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

112. As the result of Defendants' discrimination and retaliation against Plaintiff on the basis of his exercising his rights under the FMLA, Plaintiff has suffered and continues to suffer substantial losses, including, but not limited to, the loss of past and future earnings, bonuses, deferred compensation, pension benefits, health insurance benefits, and other employment benefits, and interest thereon and such other and further damages as are available to Plaintiff under the FMLA. Plaintiff is also entitled to liquidated damages as provided in the FMLA.

113. As a further result of Defendants' actions, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by Defendants.

114. Plaintiff is also entitled to declaratory and injunctive relief removing any unsatisfactory rating and ineligibility for rehire assigned to him as the result of said Defendants' actions and reinstatement of his employment.

## FOURTH CAUSE OF ACTION
### (SHRL and CHRL)(Individual Defendants, UFT and Reiskin)

115.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 114 of this complaint with the same force and effect as if set

forth herein.

116. The Individual Defendants, UFT and Reiskin aided and abetted said discriminatory conduct and/or incited, compelled or coerced the doing of any of the acts forbidden under the SHRL and the CHRL, or to attempted to do so.

117. Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

118. As the result of the Individual Defendants' actions on account of Plaintiff's disability, his record of disability, the Individual Defendants', UFT's and Reiskin's perception of his disability, in violation of the SHRL and the CHRL, Plaintiff has suffered and continues to suffer substantial losses, including, but not limited to, the loss of past and future earnings, bonuses, deferred compensation, pension benefits, health insurance benefits, and other employment benefits.

119. As a further result of the Individual Defendants', UFT's and Reiskin's actions in violation of the SHRL and the CHRL, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation by said defendants.

120. As a further result of Individual Defendants' actions in violation of the SHRL and the CHRL, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, embarrassment, anguish,  and mental distress, and other incidental and consequential damages and expenses.

121. The conduct of the Individual Defendants was shocking, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages under the CHRL.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 (City of New York, Board of Education, Individual Defendants)

122. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 121 of this complaint with the same force and effect as if set forth herein.

123. Defendants City of New York and Board of Education are public entities acting under color of state law.

124. As a matter of policy and practice, said defendants terminate, rate unsatisfactory, and classify as ineligible for rehire, teachers who are disabled, have a record of being disabled, or are regarded as being disabled, on account of a past drug dependency or addiction.

125. Said policies and/or conduct directly contributed to the disparate treatment of Plaintiff on the basis of his disability, thereby depriving Plaintiff of his constitutional right to equal protection of the laws and due process under the Fourteenth Amendment of the United States Constitution.

126. The Individual Defendants were at all times relevant herein employed by the City of New York and the Board of Education, and discriminated against him under color of state law.   Said discrimination against Plaintiff on the basis of his disability violated his right to equal protection of the laws and due process under the Fourteenth Amendment to the United States Constitution.

127. Plaintiff has been denied employment, lost wages, promotional opportunities, bonuses, and other benefits and compensation, and has suffered and continues to suffer mental anguish, emotional distress, humiliation and other

compensable injuries as a result of defendants' discriminatory practices. Defendants conduct was wilful, outrageous, shocking, and evinced a lack of any good faith efforts to control or discourage such conduct thereby entitling Plaintiff to an award of punitive damages against Defendants.

## SIXTH CAUSE OF ACTION:
### Conspiracy to Deprive of Constitutional or Statutory Rights
### (42 U.S.C. 1985)(All Defendants)

128. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 127 of this complaint with the same force and effect as if set forth herein.

129. Defendants UFT and Marvin Reiskin, engaged in  a conspiracy with the City, The Board of Education and the Individual Defendants for the purpose of depriving Plaintiff of equal protection of the laws or of equal privileges or immunities under the law.

130. Defendants UFT, Reiskin, City, the Board of Education, and the Individual Defendants acted in furtherance of a conspiracy to deprive Plaintiff of the equal protections of the law on account of his disability.

131. Defendants acted in concert to try and eliminate teachers who had suffered in the past from drug dependencies. The UFT and Reiskin secretly communicated with the City and Board of Education as part of a plan to eliminate Plaintiff as a teacher on account of his disability. The City, Board of Education, and Individual Defendants, then further acted in furtherance of the conspiracy.

132. Plaintiff was injured in his person and property and deprived of a right of a citizen of the United States as a result of these actions

133. Defendants acted with class-based discriminatory animus on account of Plaintiff being or being perceived as a person with a disability.

134. The Defendants collectively acted and agreed to target Plaintiff and to directly or indirectly deprive him of the equal protection of the laws, or of equal privileges and immunities under the laws on account of him being a person with a disability.

135. One or more of the Defendants that engaged in said conspiracy, did or caused to be done, an act in furtherance of the object of such conspiracy, thereby injuring Plaintiff's person and property, and depriving him of having and exercising rights or privileges as a citizen of the United States.

136. Plaintiff has been denied employment, lost wages, promotional opportunities, bonuses, and other benefits and compensation, and has suffered and continues to suffer mental anguish, emotional distress, humiliation and other compensable injuries as a result of defendants' discriminatory practices. Defendants conduct was wilful, outrageous, shocking, and evinced a lack of any good faith efforts to control or discourage such conduct thereby entitling Plaintiff to punitive damages.

### SEVENTH CAUSE OF ACTION:
Neglect to Prevent Rights Violations (42 U.S.C. 1986)
(City and Board of Education)

137. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 136 of this complaint with the same force and effect as if set forth herein.

138. Defendants City and Board of Education, having knowledge that the

wrongs conspired to for the purpose of depriving Plaintiff of equal protection of the laws or of equal privileges or immunities under the law, were about to be committed, and having power to prevent or aid in preventing the commission of the same, neglected or refused to do so.

139. Plaintiff has been denied employment, lost wages, promotional opportunities, bonuses, and other benefits and compensation, and has suffered and continues to suffer mental anguish, emotional distress, humiliation and other compensable injuries as a result of defendants' discriminatory practices. Defendants conduct was wilful, outrageous, shocking, and evinced a lack of any good faith efforts to control or discourage such conduct thereby entitling Plaintiff to punitive damages.

### EIGHTH CAUSE OF ACTION:
#### Intentional Infliction of Emotional Distress
#### (All Defendants)

140. Plaintiff  repeats and realleges each and every allegation contained in paragraphs 1 through 139 of this complaint with the same force and effect as if set forth herein.

141. Plaintiff avers that Defendants' conduct described herein constitutes extreme and outrageous conduct intended to cause Plaintiff severe emotional distress.

142. As the result of the foregoing egregious conduct, Plaintiff has suffered, continues to suffer, and will suffer in the future, severe emotional distress, mental anguish and humiliation, and physical harm, and has incurred damages thereby, justifying the imposition of compensatory and consequential damages against defendants.

24

143. The conduct of Defendants was shocking, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

## NINTH CAUSE OF ACTION:
### Defamation (All Defendants)

144. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 143 of this complaint with the same force and effect as if set forth herein.

145. Each of the Defendants knowingly or recklessly published and communicated to the public or others who had no need to know them, false statements that Plaintiff was addicted to heroin or other illegal drugs, and/or statements that contained or created the impression that Plaintiff was addicted to drugs, which statements were false at the time they were written, spoken or otherwise communicated,  and that malign Plaintiff's dependability and professionalism.

146. Defendants knew the statements to be false or acted with reckless disregard of their falsity.

147. As the result of the foregoing conduct, Plaintiff has suffered and will continue to suffer severe mental anguish and pain, including loss of self-esteem, personal dignity and career fulfillment; Plaintiff has also experienced physical distress which originated from the aforesaid mental suffering. Plaintiff has also suffered great inconvenience, indignity and risk, including, but not limited to a loss of his livelihood, and a loss of his ability to meet various financial obligations. Plaintiff was inhibited and prevented from enjoying life, and was forced to suffer emotional injury which he will

25

continue to experience into the future.

148. The conduct of Defendants was shocking, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

## TENTH CAUSE OF ACTION:
Prima Facie Tort (All Defendants)

149.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 148 of this complaint with the same force and effect as if set forth herein.

150. Defendants intentionally and maliciously violated Plaintiff's civil rights thereby causing Plaintiff harm and injury.

151. Defendants in so doing acted without any legitimate business motive, excuse or justification.

152. As the result of Defendants' malevolent conduct, Plaintiff was deprived of his ability to engage in his chosen profession, has suffered lost wages, benefits and other forms of compensation, incurred and continues to incur unreimbursed medical, dental and other health care expenses, and has suffered other compensatory and special damages.

153. The conduct of Defendants was shocking, outrageous and malicious, was intended to injure Plaintiff, and was done with reckless indifference to Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a.      Declaring that the acts and practices complained of herein are in violation of the United States Constitution, the ADA, the Rehabilitation Act, the FMLA, the SHRL, the CHRL, and 42 U.S.C. §§ 1983, 1985 and 1986;

b.      Enjoining and permanently restraining these violations of law;

c.      Directing defendants to take such affirmative action as is necessary to ensure that the effect of these unlawful employment practices are eliminated;

d.      Directing defendants to make Plaintiff whole for all earnings and other compensation and benefits he would have received but for Defendants' discriminatory conduct, including but not limited to wages, promotional opportunities, pensions, other lost benefits, and interest thereon;

e.      Directing Defendants to pay Plaintiff compensatory damages, including damages for her mental anguish, humiliation, embarrassment, and emotional and physical injury, and injury to reputation;

f.      Awarding Plaintiff the costs, disbursements, and expert fees of this action together with pre-judgment interest and reasonable attorney's fees;

g.      Directing defendants to pay punitive damages and liquidated damages; and

h.      Granting Plaintiff such other and further relief as this Court deems necessary and proper.

27

## DEMAND FOR A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a trial by jury in this action.

Dated:     New York, New York
             May 28, 2002

                                    LAW OFFICES OF MARK H. BIERMAN
                                    Attorneys for Plaintiff
                                    Three New York Plaza, 14th Floor
                                    New York, New York 10004
                                    (212) 363-6960

                                    Mark H. Bierman   (4696)

28