**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

**RICHARD WOLIN**,                                                :

                **Plaintiff,**               :        **Index No.**
                                          **CV-02-3119(CPS)(MDG)**

                                           :

          **-v-**                                                    :

                                           :

**THE NEW YORK CITY BOARD OF EDUCATION,**
**THE CITY OF NEW YORK, AND JOHN Q. ADAMS,**
**NEAL OPROMALLA , THOMAS W. HYLAND**
**VINCENT GRIPPO, THOMAS PENNELL AND**
**THERESA EUROPE Individually and as employees,**
**UNITED FEDERATION OF TEACHERS, and**
**MARVIN REISKIN, individually and as a representative.**

                    **Defendants.**                  :
-----------------------------------------------------------------------X

**PLAINTIFF≠S BRIEF IN OPPOSITION TO DEFENDANTS≠ UFT**
**AND REISKIN≠S MOTION TO DISMISS AND IN SUPPORT OF**
**THE PLAINTIFF≠S CROSS-MOTION FOR LEAVE TO REPLEAD**

                                  **MARK H. BIERMAN, ESQ.**
                                  **Attorney for Plaintiff**
                                  **Richard Wolin**
                                  **Three New York Plaza, 14th Flr.**
                                  **New York, New York 10004**
                                  **212-363-6960**

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ..................................................................................i

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ................................................................................2


ARGUMENT

       POINT I

       THE PLAINTIFF=S COMPLAINT STATES A CAUSE
       OF ACTION SUFFICIENT TO WITHSTAND DEFENDANTS=
       12(b)(6) MOTION TO DISMISS PLAINTIFF=S  CAUSE OF
       ACTION UNDER 42 U.S.C. 1985(2) .........................................8

            A. Standard of Review on a Motion to Dismiss
            Pursuant to FRCP 12(b)(6) ...............................................8

            B. Plaintiff Has Alleged Sufficient Facts to Support
            His Claim Pursuant to 42 U.S.C. 1985(3) .......................11

            C.  Plaintiff=s ' 1985(3) Should Not Properly Be
            Dismissed on the Grounds Asserted by Defendants
            Relating to Causation .......................................................17

       POINT II

       PLAINTIFF=S STATE CLAIMS AGAINST DEFENDANTS
       UFT AND REISKIN SHOULD NOT BE DISMISSED ..............23

       POINT III
       PLAINTIFF SHOULD BE GRANTED LEAVE TO
       AMEND HIS COMPLAINT ......................................................24

CONCLUSION .................................................................................25

## Table of Authorities

**Cases**

*Angola v. Civiletti*, 666 F.2d 1 (2d Cir., 1981) ...................................................................... 15

*Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991) ............................................................. 11

*Bryant  v. New York City et al.*, 1992 WL 170917 (E.D.N.Y., July 2, 1992.,Sifton, J.) ....... 14

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). ............................................................................................................. 8

*Ciambiello v. County of Nassau*, 292 F.3d 307 (2nd Cir., 2002) ............................. 15,16,24

*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) .......................... 9

*Delbene v. Alesio*, No., 2001 U.S. Dist. Ct. LEXIS 2150 (S.D.N.Y. 2001) ........................ 17

*Escalera v. New York City Hous. Auth*., 425 F.2d 853, 857 (2d Cir.1970) ........................ 11

*Fitzgerald v.  Field* U.S.Dist.Ct. LEXIS 17372  (S.D.N.Y.) ................................................. 17

*Foman v. Davis*. 371 U.S. 178,  83 S.Ct. 227,  9 L.Ed.2d 222 (1962). ............................. 25

*Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) .................................... 11

*Griffin v. Breckenridge et al.*, 403 U.S. 88, 102-03,  91 S.Ct. 1790, 1798-99, 29 L.Ed.2d 338 (1971) ....................................................................................................................... 13,18

*Haddle v. Garrison*, 525 U.S. 121,  119 S.Ct. 489, 142 L. Ed. 2d 502 (1998). ................ 19

*Healey  v. Chelsea Resources, Ltd*., 947 F.2d 611 (2nd Cir., 1991) ................................. 19

i

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 425 U.S. 738, 746,  96 S.Ct. 1848, 1853 (1976) ................................................................................. 11,15

*IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1058 (2d Cir.1993). ................... 8

*Jeffries v. Harleston*, 52 F.3d 9 (2d Cir.1995). ..................................................... 19

*Leatherman,  V. Tarrant County Narcotics Intelligence and Coordination Unit et al.*,507 U.S. 163, 167-68,  113 S.Ct. 1160, 1163, 122 L. Ed.2d 517 (1993) ................................. 8,9

*Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed. 2d 271 (1986) ........................ 21

*Mamiye Bros.,  v. Barber Steamship Lines, Inc.*, et al., 360 F.2d 774 (2nd Cir, 1966) .... 19

*Peavey v. Polytechnic Institute of New York*, 775 F.Supp. 75, 77 (E.D.N.Y.1991), *aff'd.*, 969 F.2d 1042 (2d Cir.1992). ................................................................................. 9

*Ricciuti  v  N.Y.C. Transit Authority,*  941 F.2d 119 (2nd Cir, 1991).  ............................... 25

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities*, 748 F.2d 774, 779 (2d Cir.1984). ......................................................................................................... 8

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L. Ed. 2d 1 (2002) 1,16

*Taylor v. Brentwood Union Free School District*, 143 F.3d 679 (2nd. Cir., 1998). .......... 17

*Towne v. N.Y.C. 1992 WL 170917* (E.D.N.Y.,1992). ........................................... 15

*Warner v. Orange County Dept. of Probation*, 115 F.3d 1068 (2nd Cir., 1997) ............... 20

ii

*Weinstein  v.  Albright,*  261 F.3d 127 (2d. Cir. 2001).  ........................................... 9

## Statutes and Rules

29 U.S.C.A. '2617 (FMLA) .................................................................................. 25

28 U.S.C. '' 1331, 1343(1), (3), (4) and 1391(b) ................................................ 25

28 U.S.C. '' 1331, 1343(1), (3), (4) and 1391(b), 29 U.S.C.A 791 et seq. (Rehabilitation Act) ................................................................................................................. 25

42 U.S.C. '1983. .............................................................................................. 19

42 U.S.C.1985(3) ............................................................................................. 14

42 U.S.C.A. ''12101 et seq. (ADA) ................................................................... 25

Fed.R.Civ.P. 8(a)(2). ......................................................................................... 8

Fed.R.Civ.P. 12(b)(6). ........................................................................................ 8

Fed. R. Civ. P. 15(a). ....................................................................................... 25

## PRELIMINARY STATEMENT

Plaintiff Richard Wolin (Aplaintiff@ or AWolin@), was terminated from his position as a teacher with the New York City Board of Education (ABoard@) and given an Aunsatisfactory@ rating after  approximately twelve years of receiving satisfactory ratings as a teacher.  Plaintiff=s termination and unsatisfactory rating, as well as other rights deprivations, resulted from a conspiracy between the United Federation of Teachers (AUFT@) and its District Representative, Marvin Reiskin (AReiskin), and the Board, District 20 Superintendent Vincent Grippo (AGrippo@), and others, to eliminate plaintiff as a teacher on account of his disability involving a previous drug dependency. The UFT and Reiskin acted in furtherance of the conspiracy by making, or aiding and facilitating the making of, false and inflammatory statements to the Board of Education based on a confidential communication from plaintiff to Reiskin regarding plaintiff=s previous drug dependency knowing that such allegations would adversely affect plaintiff=s employment even if such allegations were not substantiated, and then by taking or failing to take further action in order to facilitate and advance the objectives of the conspiracy.

The complaint states a cause of action, and places defendants Reiskin and the UFT on notice of plaintiff=s claims, pursuant to 42 U.S.C. ' 1985(3) sufficient to defeat defendants= motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure(AFRCP@). All of the federal and state claims asserted against all of the defendants derive from the same common nucleus of operative facts.

To the extent that the Court determines that plaintiff=s ' 1985(3) claim against the UFT and Reiskin fails to state a claim, plaintiff respectfully requests leave to replead.

## STATEMENT OF FACTS

The Complaint alleges numerous and detailed facts sufficient to place defendants UFT and Reiskin on notice of the plaintiff=s claim pursuant to 42 U.S.C. ' 1985(3) as follows:

Plaintiff, at all relevant times herein, was a member of the UFT[1].  He had been employed by the New York City Board of Education from September of 1988 until the termination of his employment effective June 30, 2001[2].

On or about Friday, January 26, 2001, Plaintiff had a confidential telephone conversation with the Plaintiff=s UFT representative, Marvin Reiskin[3].  During that telephone conversation, Plaintiff advised Mr. Reiskin in confidence about his participation in a drug treatment program[4].

Plaintiff later discovered that the next Monday morning, January 29, 2001, the Board received an alleged Aanonymous@ communication, which must have emanated from Reiskin, purportedly reporting that Plaintiff had a drug dependency problem and was in a drug treatment facility[5]. The form list the allegation as follows:

> A...Richard Wolin, a teacher at a middle school in CSD 20, is a heroine addict and frequently comes to school under the influence. Subject is currently on sick leave while in a rehab program@

Plaintiff denies the drug related allegations contained in that complaint form except to the extent that he had participated in a rehabilitation program for a chemical dependency.

---

[1]Complaint &36.

[2]*Id*. &12.

[3]*Id*. &36.

[4]*Id.* &37.

[5]*Id*. &38.

2

As Plaintiff also later learned, by letter dated January 30, 2001 the Special Commissioner of Investigation for the New York City School District, by its Chief Investigator, Thomas Pennell, wrote to Ms. Theresa Europe, Director of Office of Special Investigations to inform her about the alleged information received concerning Plaintiff's alleged drug use and to take action against Plaintiff[6].

Thereafter, Plaintiff was instructed to report to a physical examination that was to be conducted by the Board of Education on February 26, 2001[7].  After the examination, Plaintiff was instructed to report to the District Office to see District 20 Community Superintendent, Vincent Grippo[8].

On February 28, 2001, Plaintiff met with Grippo at the District 20 office. Grippo told Plaintiff that Plaintiff was being investigated without identifying the nature of the investigation[9]. Grippo told Plaintiff that he was not satisfied with the results of the February 26, 2001 examination and that Plaintiff was required to submit to another physical examination by the Board of Education[10] .

On February 26, 2001, Plaintiff was found fit to return to work, and did so. However, Plaintiff was instructed  to report to the District Office, not to the classroom. Plaintiff was given no meaningful duties to perform at the District Office and was forced to spend his days doing nothing but sitting at the District Office during his work hours.

---

[6]*Id*. &39.

[7]*Id*. &40.

[8]*Id*. &41.

[9]*Id*. &42.

[10]*Id*. &43.

On March 27, 2001 Plaintiff again appeared at the medical offices that he had been instructed to report to[11].

Plaintiff was surprised to learn that the office he had been sent to was the office of a psychiatrist, Dr. Garner, of the offices of the Board of Education=s Medical Bureau.  While waiting to see Dr. Garner, an office employee handed Plaintiff a copy of the AComplaint Form@ dated January 29, 2001 from the Special Commissioner of Investigation for the New York City School District .  It was immediately before being seen by the Board of Education=s psychiatrist that Plaintiff was confronted with that complaint form[12].

The Acomplaint form@ was dated January 29, 2001, the very next business day after Plaintiff advised Reiskin,  that he was staying at a drug rehabilitation facility[13].   That same day that the examination was held, March 27, 2001, Plaintiff was found by the Board=s doctors to be ANot Fit at present@ with an indication that he was to be re-examined in three weeks[14]. There was no explanation as to the Board=s doctor=s conclusion.

On April 17, 2001, Plaintiff met with the Board=s psychiatrist, discussed his January 6th car accident,  provided her with a copy of the police accident report, and discussed his participation in the substance dependency treatment facility[15].  On April 17, 2001 Plaintiff was found Afit@ by the psychiatrist to return to the classroom, to be re-evaluated in two months[16].

---

[11]*Id*. &44-45.

[12]*Id*. &46-48.

[13]*Id*. &&48,51.

[14]*Id*. &52.

[15]*Id*. &53.

[16]*Id*. &54.

Plaintiff however was not permitted to return to the class room and instead was required to continue reporting to the District Office where he continued to be deprived of any meaningful duties[17]. On April 17, 2001 the medical review concluded that Plaintiff could return to work at that time, but that final determination of his status Awill follow completion of ongoing evaluation@[18]. On June 15, 2001 Plaintiff was again found Afit@ to work[19].

The Board of Education conducted its Ainvestigation@, subjected plaintiff to numerous examinations, and withdrew plaintiff=s teaching duties in response to the information which originated with Reiskin. Plaintiff was then told to appear on May 31, 2001 at the office of the Senior Superintendent of Community School District 20, Vincent Grippo to discuss the drug allegations[20].   At attendance at this meeting were Marvin Reiskin, the District 20 UFT Representative,  Neal Opromalla, the ASpecial Assistant to the Superintendent@, and John Adams, the Principal of I.S. 187[21].  At the May 31 meeting, Plaintiff was for the first time given a copy of a Memorandum dated March 15, 2001 to Thomas W. Hyland, Deputy Director of the Office of the Chancellor of the Board of Education of the City of New York from a person identified as AConfidential Investigator@ Anthony DeLeo.

 The document contained the purported results of an investigation allegedly conducted by Mr. DeLeo at the request of the Board of Education based on an alleged Aanonymous@ complaint[22].

---

[17]*Id*. &55.

[18]*Id*. &56.

[19]*Id*. &57.

[20]*Id*. &&59-60.

[21]*Id*. &62.

[22]*Id*. &63-64.

One of the principal reasons for the meeting, and for the subsequent termination of Plaintiff stemmed from the allegations made in the anonymous complaint. Reiskin and the UFT avoided providing plaintiff with any genuine assistance throughout this time in order to aid Grippo and the Board in its removal of the Plaintiff.Plaintiff made clear that his treatment had been successful as confirmed in the letter of the outpatient facility that Plaintiff was attending, addressed to the Board and dated June 12, 2001 which had been hand delivered[23].  By letter dated June 21, 2001, Plaintiff was informed that his position as a teacher was being terminated, that he was being rated Aunsatisfactory@, and that he was being placed on the ABoard=s Ineligible Inquiry List@ which would bar him from future employment with the New York City Board of Education[24].

Defendants the Board of Education, the City , Adams, Opromalla, Hyland, Grippo, Pennell, Europe, UFT and Reiskin engaged in a concerted effort to cause Plaintiff=s dismissal as teacher and to prevent him from working for the Board of Education in the future and otherwise deprive him of his ability to work in his chosen profession, on account of his disability[25].

Defendants UFT, Reiskin, City, the Board of Education, and the Individual Defendants acted in furtherance of a conspiracy to deprive Plaintiff of the equal protections of the law on account of his disability[26].  Defendants acted in concert to try and eliminate teachers who had suffered in the past from drug dependencies[27]. The UFT and Reiskin secretly communicated with

---

[23]*Id.* &70.

[24]*Id.* &70.

[25]*Id.* &70.

[26]*Id.* &130.

[27]*Id.* &131.

the City and Board of Education as part of a plan to eliminate Plaintiff as a teacher on account of his disability[28]. The defendants collectively acted and agreed to target Plaintiff and to directly or indirectly deprive him of the equal protection of the laws, or of equal privileges and immunities under the laws on account of him being a person with a disability[29]. The City, Board of Education, and Individual Defendants, then further acted in furtherance of the conspiracy[30]. Plaintiff was injured in his person and property and deprived of a right of a citizen of the United States as a result of these actions[31].

---

[28]*Id*. **&**131.

[29]*Id*. **&**134.

[30]*Id*. **&**135.

[31]*Id*. **&**136.

## ARGUMENT POINT I

**THE PLAINTIFF=S COMPLAINT STATES A CAUSE OF
ACTION SUFFICIENT TO WITHSTAND DEFENDANTS=
12(b)(6) MOTION TO DISMISS PLAINTIFF=S SIXTH
CAUSE OF ACTION UNDER 42 U.S.C. 1985(2)**

## A. Standard of Review on a Motion to Dismiss Pursuant to FRCP 12(b)(6)

The Federal Rules of Civil Procedure do not require a plaintiff to set out in detail the
facts upon which a claim is based. All that is required is "a short plain statement of the claim"
giving notice of the nature of the claim and the grounds upon which it rests. *Leatherman v.
Tarrant County Narcotics Intelligence & Coord. Unit*, 507 U.S. 163, 164 (1993); see also
Fed.R.Civ.P. 8(a)(2).

In reviewing the legal sufficiency of the complaint, the court is required to take as true all
of the allegations contained in plaintiff's complaint and draw all reasonable inferences in favor of
the plaintiff. *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1058 (2d Cir.1993). The
function of the court on a motion for judgment on the pleadings is merely to "assess the legal
feasibility of the complaint, not to assay the weight of the evidence which might be offered in
support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities*, 748 F.2d
774, 779 (2d Cir.1984).

The standard of review on a motion to dismiss is heavily weighted in favor of the
plaintiff  drawing all reasonable inferences from the complaint's allegations. *California Motor
Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).
The complaint must be sustained and the motion to dismiss denied unless " it appears beyond
doubt that the plaintiff can prove no set of facts in support of his claim[s] which would entitle
him to relief. " *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957));

*Weinstein  v.  Albright*,  261 F.3d 127 (2001).  This principle is strictly applied to actions

claiming civil rights violations.  *Peavey v. Polytechnic Institute of New York*, 775 F.Supp. 75, 77

(E.D.N.Y.1991), aff'd.,  969 F.2d 1042 (2d Cir.1992).

 The pleading requirements for civil rights conspiracy claims are no greater that required

for any other civil claim. As was held in *Leatherman,  V. Tarrant County Narcotics Intelligence*

*and Coordination Unit et al.*,507 U.S. 163, 167-68,  113 S.Ct. 1160, 1163, 122   L. Ed.2d 517

 (1993):

> In Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), we said in
> effect that the Rule meant what it said:
>  "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in
> detail the facts upon which he bases his claim.   To the contrary, all the Rules
> require is 'a short and plain statement of the claim' that will give the defendant
> fair notice of what the plaintiff's claim is and the grounds upon which it rests."
> Id., at 47, 78 S.Ct., at 103 (footnote omitted).

The court went on to point out that the Federal Rules requirement that a pleading be pled with

particularity applies only with respect to causes of action alleging fraud and mistake thereby

excluding such a requirement in all other civil causes of action as follows:

>  Rule 9(b) does impose a particularity requirement in two specific instances.   It
> provides that "[i]n all averments of fraud or mistake, the circumstances
> constituting fraud or mistake shall be stated with particularity."   Thus, the
> Federal Rules do address in  Rule 9(b) the question of the need for greater
> particularity in pleading certain actions, but do not include among the enumerated
> actions any reference to complaints alleging municipal liability under '1983.
> Expressio unius est exclusio alterius.

 The Supreme Court's  more recent statement of the limited pleading requirements is

equally emphatic in rejecting the lower court's attempt to engraft a greater pleading requirement

onto the Federal Rules.  In reviewing the imposition of greater pleading requirements in

discrimination claims the court in *Swierkiewicz v. Sorema N.A* , 534 U.S. 506, 122 S.Ct. 992,

122 S. Ct. 992, 152 L. Ed.2d 1 (2002) held that such heightened pleading requirements conflict

with the mandate of the Federal Rules. The court emphasized the notice pleading only

requirements embodied in the legislative scheme of the Federal Rules as follows:

> Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited
> exceptions.  Rule 9(b), for example, provides for greater particularity in all
> averments of fraud or mistake.  [FN3] This Court, however, has declined to
> extend such exceptions to other contexts... Just as  Rule 9(b) makes no mention of
> municipal liability under Rev. Stat. ' 1979, 42 U.S.C. ' 1983 (1994 ed., Supp. V),
> neither does it refer to employment discrimination. Thus, complaints in these
> cases, as in most others, must satisfy only the simple requirements of  Rule
> 8(a)[FN4]. [32]

The court *in Swierkiewicz* went on to point out that:

> If a pleading fails to specify the allegations in a manner that provides sufficient
> notice, a defendant can move for a more definite statement under  Rule 12(e)
> before responding. Moreover, claims lacking merit may be dealt with through
> summary judgment under  Rule 56. The liberal notice pleading of  Rule 8(a) is the
> starting point of a simplified pleading system, which was adopted to focus
> litigation on the merits of a claim. See  Conley, supra, at 48, 78 S.Ct. 99 ("The
> Federal Rules reject the approach that pleading is a game of skill in which one
> misstep by counsel may be decisive to the outcome and accept the principle that
> the purpose of pleading is to facilitate a proper decision on the merits").

The court *in Swierkiewicz* also rejected the rationale of the Second Circuit cases relied

upon by defendants that complaints that rely on conclusory allegations would invite excessive

litigation, holding that that is an issue for congress, not the courts to address given the plain

mandate of the existing Federal Rules and that the pleading standard set forth in the Federal

Rules is without regard to whether a claim will succeed on the merit. The court concluded that it

is not necessary for the plaintiff to  plead a prima facie case in its complaint.

---

[32] The courts footnote gives an example of the simplicity of pleading contemplated by the Federal
Rules as follows:
 FN4. These requirements are exemplified by the Federal Rules of Civil Procedure Forms, which "are
sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the
rules contemplate."  Fed. Rule Civ. Proc. 84. For example, Form 9 sets forth a complaint for negligence in
which plaintiff simply states in relevant part: "On June 1, 1936, in a public highway called Boylston
Street in Boston, Massachusetts, defendant negligently drove a motor vehicle against plaintiff who was
then crossing said highway."

Not only is a greater pleading requirement not to be imposed on civil rights actions, in fact, the rulings barring the granting of a motion to dismiss has been particularly adhered to in civil rights actions.  See  *Gant v. Wallingford Bd. of Educ*., 69 F.3d 669, 673 (2d Cir.1995); *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.1994);  *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991);  *Escalera v. New York City Hous. Auth.*, 425 F.2d 853, 857 (2d Cir.1970); *Holmes v. New York City Hous. Auth.*, 398 F.2d 262, 264- 65 (2d Cir.1968).

Moreover, and consistent with the notice pleadings contemplated by the Federal Rules, "dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hospital Bldg. Co. v. Trustees of Rex Hosp*., 425 U.S. 738, 746 425 U.S. 738, 746, 96 S.Ct. 1848, 1853 (1976)).  This is particularly so in cases involving claims of conspiracies. A>Where the proof is largely in the hands of the alleged conspirators=,  Poller v. Columbia Broadcasting, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962), dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly@. *Hospital Building Company  v. Trustees of Rex Hosp*., 425 U.S. 738, at 746,  96 S.Ct. 1848, at 853 (1976).

 **B. Plaintiff Has Alleged Sufficient Facts to Support His Claim Pursuant to 42 U.S.C. 1985(3)**.

As is set forth above, under modern federal pleading rules, the purpose of the complaint is not to supply every fact relating to the claims being asserted, but rather to allege sufficient facts to place the defendant on notice of the claims. The allegations in the instant complaint, and all inferences that may reasonable be drawn therefrom, more than meets that requirement.

Reiskin and the UFT are alleged to have conspired with a the New York City Board of Education=s District Superintendent and other employees of the Board of Education, in order to bring about the  termination of plaintiff=s employment by the Board as a teacher on account of

plaintiff=s disability involving a past drug dependency. The complaint alleges that Reiskin, the UFT, the Board and the other defendants targeted plaintiff for termination, after plaintiff communicated to Reiskin as a District Representative for the UFT, confidential information regarding his disability, which Reiskin then communicated in a distorted and inflammatory manner to the other defendants as part of a conspiracy to eliminate plaintiff as a teacher in the District in which he taught on account of that disability.

The complaint infers that Reiskin then told the Board of Education that defendant was a Aheroine addict@ and that he came to school Aunder the influence@, as part of a purposeful effort to assist the Board in its efforts to terminate any teacher suspected of any disability involving drug use. The complaint further alleges that defendants acted in concert to try and eliminate teachers who had suffered in the past from drug dependencies or were otherwise associated in any way with drug use. The complaint further alleges that the UFT and Reiskin secretly communicated with the City and the Board of Education as part of a plan to eliminate Plaintiff as a teacher on account of his disability involving his drug dependency.

The complaint further avers that Reiskin, with the clear purpose of setting in motion the City and Board of Education=s machinery for terminating a teacher to further its policy and practice of eliminating teachers with past drug use or dependencies, acted in furtherance of a conspiracy to do so by conveying information given to him by a member of the Union with the expectation that such information would not be used by the union against him, by making inflammatory statements regarding plaintiff=s disability by mischaracterizing his chemical dependency as a Aheroine addiction@ and asserting that he came to school under the influence of heroin, by avoiding any interference with the Board=s repeated and abusive referrals of plaintiff to Board doctors, by avoiding interference with plaintiff=s humiliating assignment to the District

**12**

Office, and by then appearing at meetings concerning plaintiff=s alleged drug dependency at which Reiskin and the UFT further participated in the conspiracy to eliminate plaintiff as a teacher and facilitating the Board=s deprivation of plaintiff=s livelihood.

Reiskin=s alleged statements to the Board regarding plaintiff=s alleged heroin addiction were never substantiated by the Board, yet, plaintiff alleges, Reiskin=s acts ultimately resulted in the Board finding a pretextual reason for terminating plaintiff=s employment, in order to accomplish the UFT, the Board=s and the Superintendent=s goal of eliminating teachers in the district alleged to have past drug related problems, including plaintiff because of his disability. The complaint also infers that the UFT and Reiskin aided the Board, the District Superintendent Grippo and other Individual Defendants in violating plaintiff=s civil rights, for the accomplishment of their own common interests.

The Supreme Court in *Griffin v. Breckenridge et al.*, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798-99, 29 L.Ed.2d 338 (1971) in evaluating the sufficiency of a cause of action under 42 U.S.C. ' 1985(3)[33] held as follows:

> We return to the petitioners' complaint to determine whether it states a cause of action under ' 1985(3) as so construed. To come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on

---

[33] 42 U.S.C.1985(3), Conspiracy to interfere with civil rights, provides in relevant part as follows: If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'

AIn order to survive a motion to dismiss for failure to state a claim, a complaint under ' 1985 must state facts from which the existence of a conspiracy involving the named parties can be inferred@. *Bryant v. New York City et al*., No. CV-92-0960. 1992 WL 170917 (E.D.N.Y., July 2, 1992.,Sifton, J.) However, Athe facts surrounding a conspiracy claim are usually not available to the plaintiff. AThus, >[c]onspiracies are seldom proven with direct evidence, and ... factual allegations of overt acts which give rise to a reasonable inference of the formation and furtherance of a conspiracy will suffice= to withstand a motion to dismiss. Long Island Lighting Co. v. Cuomo, 666 F. Supp. 370, 426 (N.D.N.Y. 1987) (citation omitted), vacated in part on other grounds, 888 F.2d 230 (2d Cir. 1989)@. *Townes v. N.Y.C.*, Dist. Ct. (E.D.N.Y., 1996)(Sifton J.)

Indeed, Plaintiff=s complaint is extremely detailed in its factual allegations given that the facts regarding conspiracy are peculiarly in the knowledge of the conspirators and no discovery has yet occurred. See *Hospital Building Company v. Trustees of Rex Hosp*., *supra*. These allegations clearly place defendants on notice of the claim, of the nature of the conspiracy, and of the time and place that the conspiracy occurred, as is evidenced by defendants= attempt to dissect the factual details of the claim in their motion papers. It is respectfully submitted that Defendants= motion, while framed as a pre-answer motion to dismiss, in fact argues that plaintiff cannot Ademonstrate@ his claim on the merits. However, as is set forth above, that is not the

14

proper issue on a Rule 12(b)(6) motion and any such  motion should await the completion of

discovery when it may more properly be framed as a motion for summary judgment.

Defendants rely heavily on the case *Angola v. Civiletti*, 666 F.2d 1 (2d Cir., 1981) ,

which imposed a heightened pleading requirement on civil rights claims. However, as is

discussed above, the Supreme Court in *Leatherman, supra.* and more recently in *Swierkiewicz  v.*

*Sorema N. A*, *supra*. expressly rejected such heightened pleading requirements, and the

rationales that form the underpinning of the *Angola* decision.

 Defendants also cite to *Ciambiello v. County of Nassau*, 292 F.3d 307 (2nd Cir., 2002),

in which the plaintiff in that case asserted a ' 1983 claim against his union and the county that

employed him. Assuming the continued vitality of *Ciambiello* in light of *Swierkiewicz* , nothing

in the court=s holding in *Ciambello* supports a dismissal of the complaint in the instant case.

As the court in *Ciambello* pointed out, the complaint in that case was bereft of *any*

factual statements and merely asserted in exclusively conclusory terms that the defendants had

conspired to deprive the plaintiff of a constitutional right. The court in *Ciambello* pointed out

that there were no statements of time or place such as could enable the defendants to intelligently

prepare their defense. In contrast, the complaint in this case states specific information

concerning the nature of the conspiracy, the precise period that the conspiracy occurred, the

individuals involved in the conspiracy, and some of the specific acts committed in furtherance of

the conspiracy. Indeed, defendants themselves do not seriously argue that the complaint is so

vague that they cannot intelligently defend.

As the court in *Swierkiewicz  v. Sorema N. A*., *supra.*  pointed out, under modern

pleading rules, other than in claims of fraud and mistake, there is no basis under the federal rules

for requiring more than a short and plain statement of the claim which the plaintiff in this case

has more than complied with. It is respectfully submitted that to dismiss a claim as particularized as the instant claim in the complaint is, would run afoul of the Federal Rules and would deny Plaintiff the very opportunity to discover facts and establish his case that the Federal Rules contemplate.

These liberal pleading rules are particularly apt, where as here, the details of the conspiracy are peculiarly within the knowledge of the defendants who engaged in the conspiracy, and before plaintiff has had a full and fair opportunity to engage in discovery in order to determine additional information to assist in establishing his claim. Given the very nature of conspiracy claims, and the usual efforts of conspirators to conceal information relating to that conspiracy, it is respectfully submitted that the consequence of premature dismissals of such claims in advance of discovery would only serve to eliminate otherwise valid causes of action contrary to the intention and purpose of the legislation recognizing civil remedies where conspiracies to deprive individuals of civil rights have occurred.

The remainder of the cases cited by defendants lend no further support to their argument. For example, *Delbene v. Alesio*, 2001 U.S. Dist Ct. LEXIS 2150 (S.D.N.Y, 2001) involved an anomalous claim that the defendant conspired to utilize a court deposition to intimidate him in anticipation of his testimony at trial in violation of 42 U.S.C. ' 1985(2) merely by having cross-examined him at the deposition.  *Fitzgerald v.  Field; .* 1999 U.S. Dist. LEXIS 17372 (S.D.N.Y., 1999), *aff=d* 2000 U.S. App. LEXIS 14165 (2d Cir. , 2000) involved another peculiar claim asserting a 42 U.S.C. ' 1983 claim because the judge in a separate case involving the plaintiff merely ruled against the plaintiff.

Accordingly, the complaint sufficiently pleads a cause of action against defendants UFT and Reiskin pursuant to 42 U.S.C. ' 1985(3) and should be sustained.

**C.  Plaintiff=s ' 1985(3) Should Not Properly Be Dismissed on the Grounds Asserted by Defendants Relating to Causation**.

Defendant next argues that plaintiff has failed to Ademonstrate@ proximate causation

citing to *Taylor v. Brentwood Union Free School District*, 143 F.3d 679 (2nd. Cir., 1998).   As is

argued below, proximate causation is not an element of a ' 1985(3) claim. Moreover, even if

such an element could properly be engrafted onto such a claim, and as is further discussed

above, plaintiff is only required by his pleadings to place the defendants on notice of the claim,

not to establish or demonstrate that claim.

*Taylor* involved a post trial motion for judgment notwithstanding the verdict in an action

brought under 42 U.S.C. ' 1983. *Taylor* did not involve a conspiracy claim, but rather involved a

claim of deprivation of constitutional rights against a school principal  who delivered to his

employer complaints of the plaintiff-teacher=s alleged misconduct in connection with of a child

as he was required to do by local law and regulations. The elements of a claim of conspiracy

under ' 1985(3) differ in several significant respects from the elements of the cause of action of a

' 1983 claim. The latter cause of action requires, *inter alia*, that the act itself cause the

constitutional deprivation or harm.

As is discussed above, a complaint in a ' 1985(3) action need only allege that the

defendant did  (1) conspire (2) for the purpose of depriving, either directly  or indirectly, any

person or class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws; that one or more of the conspirators (3) did, or caused to be done,

any act in furtherance of the object of (the) conspiracy whereby another was (4a) injured in his

person or property or (4b) deprived of having and exercising any right or privilege of a citizen of

the United States. *Griffin v. Breckenridge et al*., 403 U.S. 88, 102-03,  91 S.Ct. 1790, 1798-99,

29 L.Ed.2d 338 (1971).

Thus, liability attaches under ' 1985(3) by reason of the person engaging in any act in furtherance of the conspiracy, and therefore any analogy drawn in ' 1983 actions to proximate causation in the tort context, is inapposite to a ' 1985(3) claim. The very notion that proximate causation is required by each actor to the conspiracy, is inconsistent with, and even repugnant to, the very principle of conspiracy liability under ' 1985(3) which assumes that it is the totality of the separate acts of the various actors that causes the injury, even though the each act alone may not directly cause the ultimate harm. As is noted above, the act of the conspirator may be direct or indirect, and it need only further the conspiracy to accomplish the ultimate constitutional deprivation.  The statute requires only that  if conspirators "do ... any act in furtherance of ... such conspiracy, whereby another is injured in his person or property, ... the party so injured ... may" recover damages@ (See *Haddle v. Garrison*, 525 U.S. 121,  119 S.Ct. 489, 142 502 (1998)[34].

    Significantly, *Taylor* did not involve an attack on the pleadings, but rather was decided after a full trial by jury was held and a factual determination as to causation made. Assuming, *arguendo*, that causation in the context of a ' 1983 action can be equated with a conspiracy claim under ' 1985(3), causation is, in any event,  a question of fact .*Healey  v. Chelsea Resources, Ltd.*, 947 F.2d 611 (2nd Cir., 1991); also see  *Mamiye Bros.,  v. Barber Steamship Lines, Inc*., et al., 360 F.2d 774 (2nd Cir, 1966), the sufficiency of which is not properly tested in a motion to

---

[34]In contrast, ' 1983 provides in relevant part that:
> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, **subjects, or causes to be subjected**, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.... (bold supplied)

dismiss addressed to the pleadings. Whether, as defendants urge, the acts of the Board constitute a superseding intervening cause is a factual question to be determined by the trier of fact, assuming, arguendo, that proximate causation is even appropriately applied and considered in a '1985(3) conspiracy claim.

The foregoing notwithstanding, *Taylor* is distinguishable for other important reasons. The court in *Taylor*, relied principally for its holding on another case decided post-verdict, involving the question of causality in another '1983 claim, *Jeffries v. Harleston*, 52 F.3d 9 (2d Cir.1995). In *Jeffries*, the Second Circuit held that trustees found by the jury to have voted to limit the plaintiff=s term as Chairman of his department to one year rather than the usual three years because of the content of a speech that he made in violation of the plaintiff=s constitutional rights, could not be held liable where the evidence established that the majority of the trustees voted to limit the plaintiff=s term for reasons unrelated to any constitutional deprivation. The court therefore held that regardless of the motivation of the individual trustees found by the jury to have acted to deprive the plaintiff of his constitutional rights, such motivation could not form the basis for '1983 liability, since the actual harm alleged resulted from acts unrelated to any intent to deprive that plaintiff of such rights.

The court in Taylor held that the causation requirement of '1983 is a matter of statutory interpretation rather than of common tort law. The *Taylor* court concluded that no reasonable jury could find the defendant=s action, which was only to report the filing of a complaint as was required of her by law, to be the cause of Taylor's injury. Whatever action the Board may have taken in response to the mandatory referral of the complaints, was neither foreseeable by the defendant, nor did she play any other role in causing the suspension of the plaintiff. The facts asserted in the instant complaint are dramatically different than those involved in *Taylor*.

19

Moreover, even if , assuming *arguendo* that the tort analogies applied in the ' 1983 context are relevant to ' 1985(3) analysis, and that such issues may properly be disposed of in a FRCP 12(b)(6) motion,  defendants argument remains flawed in that they fail to complete the relevant tort related analysis. *In Warner v. Orange County Dept. of Probation*,  115 F.3d 1068 (2nd Cir., 1997) the court held that while causation is a part of the analysis in determining liability for the purpose of ' 1983 claims, and that certain types of superseding actions might relieve a defendant of liability, the court held that: A[A]n actor may be held liable for >those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties.=Gutierrez-Rodriguez, 882 F.2d at 561'[65]

In *Warner*, the defendant Probation Department was held liable for the recommendations that it made in a probationary report to the court concerning the plaintiff, notwithstanding the fact that the defendant argued that the determination of the judge adopting the recommendations was a superseding cause. The court rejected the very concept now being advanced by defendants that any required Achain@ of causation is broken when a third party actually renders the determination, citing *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), which rejected a similar argument.  In *Malle*y the court held a state trooper liable under ' 1983 where he procured a warrant for the plaintiff=s arrest based on an affidavit that he should have known to have been inadequate. The court rejected the trooper=s argument that the issuance of the warrant by the court broke the Acausal chain@.

---

[35]The court in its second footnote further noted as follows:
   The First Circuit went on to state:
   A negligent defendant will not be relieved of liability by an intervening cause that was
   reasonably foreseeable, even if the intervening force may have "directly" caused the
   harm.

The UFT and Reiskin knew that accusing a teacher of heroin addiction and of coming to school Aunder the influence@ of heroin would result in all of the consequences that were suffered by the Plaintiff. The UFT and Reiskin were acutely aware and familiar with the types of action that would be taken in the District when a teacher was faced with such an accusation. The UFT and Reiskin were also aware that even if the specific drug related accusations were ultimately not proved, that some basis would be found for keeping the teacher out of the school or for terminating the teacher=s employment, given the District=s and the Board=s bias against teachers associated with drug use or a drug dependency.

Unlike in *Taylor*, the UFT and Reiskin in the instant case were not only not required to communicate the information to Wolin=s employer, they were required not to communicate such information and violate Wolin=s trust. Also unlike *Taylor*, the UFT and Reiskin did not simply truthfully communicate the accurate substance of complaints that had been made as part of a procedural requirement,  they purposefully violated Wolin=s trust and actually distorted and embellished the facts knowing that it would ultimately subject Wolin to the machinations of the Superintendent and the Board which would then inexorably operate to destroy plaintiff=s ability to teach and to engage in his livelihood, regardless of the ultimate outcome of the investigation.

The consequences of the UFT and Reiskin=s acts were foreseeable, and indeed expected. Reiskin and the UFT were well aware of what they were doing when they not only disclosed confidences of  Wolin to the Board, but added their own dramatic Aspin@ to those accusations. Reiskin and the UFT also knew that by failing to engage in any genuine efforts to assist Wolin, they would further enable the Superintendent=s efforts to eliminate Plaintiff as a teacher and that Grippo and the Board would be free to act in a manner adverse to Wolin.

Moreover, the injury to plaintiff that occurred due in part to Reiskin≈s and the UFT≈s conduct, was not only the termination of his employment, it included such other injuries as the loss of his teaching duties, his humiliation in being assigned to the district office to sit idle, his being subjected to repeated psychological evaluations and testing, his being subjected to investigations, and ultimately receiving a rating that would foreclose his ability to teach anywhere in the public school system and make the likelihood of securing other employment in his chosen profession unlikely. Each of these consequences were foreseeable and in fact were well known to Reiskin and the UFT. The action of the Board was not an intervening and superseding cause, it was a result that Reiskin and the UFT expected when they acted against Wolin and then left him suffer the anticipated consequences.

22

## **ARGUMENT POINT II**

### **PLAINTIFF=S STATE CLAIMS AGAINST DEFENDANTS UFT AND REISKIN SHOULD NOT BE DISMISSED**

Defendant seeks dismissal of the plaintiff=s state claims in the event that this Court dismisses the '1985 claim against them. Given defendant=s citation to *Ciambriello v. County of Nassau*, *supra.,* earlier in its brief, and its failure to cite that same case which requires denial of that branch of Defendants= motion for dismissal of the state claims in its third argument point, defendants= claim for such relief appears to be frivolous. In *Ciambriiello v. County of Nassau*, supra.,  the Second Circuit reinstated the state law claims against the defendant union after upholding dismissal of the sole federal claim that had been asserted against it, since the state claims Aform part of the same case or controversy@ as the '1983 claims asserted against the county, which claims survived.

In the instant case, the various federal claims asserted against the City of New York  and the Board of Education continue to be litigated in this action, and those defendants have not sought dismissal of those claims. Jurisdiction of the Court is invoked in the complaint pursuant to 28 U.S.C. '' 1331, 1343(1), (3), (4) and 1391(b), 29 U.S.C. 791 et seq. (Rehabilitation Act), 29 U.S.C. '2617 (FMLA), 42 U.S.C. '' 1981, 1983, and 1985, and 42 U.S.C. '' 12101 et seq. (ADA). The Court has supplemental jurisdiction over Plaintiff=s state, city and common law claims, pursuant to 28 U.S.C. ' 1367, and since all of the plaintiff=s claims derive from the same facts, dismissal of the state claims against the UFT and Reiskin in the event of a dismissal of the '1985(3) claim against them would not be warranted .

## ARGUMENT POINT III

### PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND HIS COMPLAINT

In the event that this court determines that plaintiff=s ' 1985(3) claim against the UFT and Reiskin is not sufficiently plead, plaintiff respectfully requests that his cross-motion for leave to serve an amended complaint in all respects be granted.

F.R.C.P. 15(a) specifically provides that leave to amend a pleading Ashall be freely given when justice so requires@. The courts have consistently held that this is a mandate to be heeded. See *Foman v. Davis.* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Where a complaint is dismissed for failure to state a claim on which relief can be granted, permission to file an amended complaint is normally granted and it is rare that such leave should be denied especially when there has been no prior amendment. *Ricciuti v N.Y.C. Transit Authority,* 941 F.2d 119 (2nd Cir, 1991).

Plaintiff has not previously sought amendment of the complaint, and the case is procedurally in its earliest stages. The majority of the amendments involve inclusion of allegations that have recently been discovered or clarified and relate principally to the issues raised by defendants UFT and Reiskin in their motion to dismiss (See declarations of Arthur Miller and Richard Wolin annexed to the cross-motion). The amendments present a further statement of the facts relating to the conspiracy and of the defendants roles in that conspiracy, as well as statements that further elucidate defendants motivation and intent in participating in the conspiracy.

24

## **CONCLUSION**

By reason of the forgoing, defendants= motion should in all respects be denied, or, in the alternative, Plaintiff=s cross-motion should in all respects be granted and plaintiff should be granted leave to replead and serve an amended complaint.

Dated: New York, New York
      September 27, 2002

_____// S //_____
MARK H. BIERMAN, ESQ. (MHB 4696)
Attorney for Plaintiff
3 New York Plaza, 14th Flr.
New York, New York 10004
212-363-6960

25