UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

RICHARD WOLIN,

        Plaintiff,

    -v-                                                        CV-02-3119   (CPS) (MDG)

THE NEW YORK CITY BOARD OF EDUCATION,
THE CITY OF NEW YORK, AND JOHN Q. ADAMS,
NEAL OPROMALLA, THOMAS W. HYLAND
VINCENT GRIPPO, THOMAS PENNELL AND
THERESA EUROPE Individually and as employees,
UNITED FEDERATION OF TEACHERS, and
MARVIN REISKIN, individually and as a representative,

        Defendants.
------------------------------------------------------------------------X

## UNION DEFENDANTS' REPLY BRIEF
## IN SUPPORT OF MOTION TO DISMISS AND
## IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND

JAMES R. SANDNER, ESQ.
Attorney for Defendants UFT and Marvin Reiskin
Office & PO Address
260 Park Avenue South
New York, New York 10010
(212) 533-6300

Conrad W. Lower, Esq.
 Of Counsel

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     POINT I

     Leave To Amend Should Be Denied Because Plaintiff's Proposed
     Amendment Does Not Cure The Defects In His Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . 1

     POINT II

     Plaintiff's Failure To Plead Specific Facts From Which A
     Conspiracy Could Be Inferred Requires Dismissal Of His Claims. . . . . . . . . . . . . . . . . . . . 6

     POINT III

     Plaintiff's Allegations Establish As A Matter Of Law That His Alleged
     Injuries Were Not Proximately Caused By Defendants UFT and Reiskin. . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**Page**

*Adlerstein v. Board of Education*, 64 N.Y.2d 90 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Angola v. Civiletti*, 666 F.2d 1 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Arnold v. IBM*, 637 F.2d 1350 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bougher v. University of Pittsburgh*, 882 F.2d 74 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 9

*Buenrostro v. Collazo*, 973 F.2d 39 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Burke v. Town of East Hampton*, 2001 U.S. Dist. LEXIS 22505 (E.D.N.Y. 2001) . . . . . . . . . . . 7

*Byars v. Jamestown Teachers' Association*, 195 F.Supp.2d 401 (W.D.N.Y. 2002) . . . . . . . . . . 7

*Citibank v. Corporation*, 968 F.2d 1489 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Harris v. Niagara Mohawk Power Corp.,* 1998 U.S. Dist. LEXIS 22009 (N.D.N.Y. 1998) . . . . . 7

*Jit Kim Lim v. Central Dupage Hospital*, 871 F.2d 644 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . 9

*Kelsey v. Muskin, Inc.,* 848 F.2d 39 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Leatherman v. Tarrant County*, 507 U.S. 163 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Orange v. County of Suffolk*, 830 F.Supp. 701 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . 6

*Schuler v. Board of Education of the Central Islip UFSD*, 2000 U.S. Dist. LEXIS 1006
 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Taylor v. Brentwood Union Free School District*, 143 F.3d 679 (2d Cir. 1998) . . . . . . . . . . . . 10

*Townes v. City of New York,* 1996 U.S. Dist. LEXIS 20220 (E.D.N.Y. 1996) . . . . . . . . . . . . . . 6

*True v. New York State Dept. of Correctional Services*, 613 F.Supp. 27 (W.D.N.Y. 1984) . . . . . 7

*Upper Hudson Planned Parenthood, Inc. v. Doe,* 1991 U.S. Dist. LEXIS 13063,
(N.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Warner v. Orange County Dept. of Probation,* 115 F.3d 1068 (2d Cir. 1997) . . . . . . . . . . . . . 10

*Washington v. Sheinberg*, 1996 U.S. Dist. LEXIS 20236 (E.D.N.Y. 1996). . . . . . . . . . . . . . . . . . 6

# ARGUMENT

## POINT I

### LEAVE TO AMEND SHOULD BE DENIED BECAUSE PLAINTIFF'S PROPOSED AMENDMENT DOES NOT CURE THE DEFECTS IN HIS COMPLAINT

In response to the motion to dismiss by defendants UFT and Marvin Reiskin ("union defendants"), plaintiff proposes to amend his complaint to include allegations made by a former teacher and former UFT representative named Arthur Miller. These new allegations do not change the core factual claims of the complaint upon which the motion to dismiss is based, but merely add a gloss of speculation as to the motives of certain defendants. Since the amendments do not change the core allegations, and Miller's speculation about the motives of the defendants do not constitute allegations of fact which can support a claim of conspiracy, the Proposed Amended Complaint cannot defeat the motion to dismiss. Therefore, in the interests of judicial economy, leave to amend should be denied.[1]

In his Proposed Amended Complaint, plaintiff continues to admit that although he reported to his employer that he was unable to work because of injuries sustained in a car accident, he "decided that while on [sick] leave he would attempt to free himself from a long term drug dependency."[2] He makes the same claim that he told Reiskin about his sick leave and his participation in the drug

---

[1] *See, Schuler v. Board of Education of the Central Islip UFSD*, 2000 U.S. Dist. LEXIS 1006, 67 (E.D.N.Y. 2000) (leave to amend may be denied where amendment would be futile).

[2] Proposed Amended Complaint, ¶48.

rehabilitation program on Friday, January 26, 2001, and that the Board learned this information the next Monday morning from an anonymous source.[3]

The Proposed Amended Complaint is also identical to the original with respect to its allegations that the Special Commissioner of Investigation for the New York City Board of Education initiated an investigation into plaintiff's conduct following the anonymous communication,[4] and that prior to his discharge, plaintiff himself disclosed to the Board of Education his participation in the drug rehabilitation facility, and that he "had a drug dependency problem in the past."[5] Finally, as in his original pleading, plaintiff makes no claim in the Proposed Amended Complaint that he had any contractual right to employment that could have been enforced by the UFT, and he makes no claim that the union defendants failed to take any action requested by him in connection with his discharge.

The allegations from the affidavit of Arthur Miller add nothing to these basic factual claims. They do not allege any overt act from which a conspiracy could be inferred. Miller has no knowledge that Reiskin was the anonymous source of the information conveyed to the Board of Education. Instead, Miller merely assumes that Reiskin informed the Superintendent of plaintiff's status, and proceeds to offer speculation as to Reiskin's motives. He combines this with speculation about the

---

[3] Proposed Amended Complaint, ¶¶51-53. Plaintiff's assertions that Reiskin was the anonymous source are ridiculous. In a letter dated August 16, 2002, plaintiff's counsel was invited to obtain a copy of the anonymous communication from the Board's attorney to verify that it did not come from Reiskin. Plaintiff's counsel made no effort to do so, yet persists in attributing the anonymous communication to Reiskin in the proposed amended complaint. This failure of plaintiff's counsel to undertake the most minimal of efforts to investigate the validity of his client's baseless accusations displays an indifference to the requirements of FRCP Rule 11. However, for purposes of this motion only, the allegation will be deemed to be true.

[4] *Id*., ¶54, ¶¶78-79.

[5] *Id.,* ¶68, ¶81.

motives of defendant Superintendent Grippo. However, Miller's conjecture about motives of persons he obviously dislikes does not substitute for allegations of fact upon which a claim of conspiracy can be supported.[6]

The Proposed Amended Complaint thus repeats Miller's belief that the Superintendent sought to eliminate unidentified "certain teachers" including "those alleged to have had any involvement with drugs or had suffered from any chemical dependancies at any time."[7] This assertion is not accompanied by a single example of such an alleged policy or practice. The Proposed Amended Complaint also parrots Miller's surmise that Reiskin and the UFT aided the Superintendent in order "to enhance his and the UFT's ability to gain favors in exchange."[8] Again, Miller and the Proposed Amended Complaint offer no factual allegation that would support this conclusory speculation.

The Proposed Amended Complaint also substitutes rhetoric for factual allegation when it attempts to cast a sinister light on the normal practice of reassigning a teacher pending an investigation and prior to taking employment action. It is alleged that "the method by which teachers would be eliminated" was to assign a teacher against whom allegations of misconduct had been made to the

---

[6] Miller's factual claims are assumed to be true for purposes of this motion because they do not provide any defense to the motion to dismiss. However, the record should be clear that on August 16, 2002, Miller told union defendants' counsel that he had no information concerning this matter other than what he had been told by plaintiff himself. Miller's representation was conveyed to plaintiff's counsel by telephone and by letter of the same date. The same information was communicated to plaintiff's counsel by letter of September 18, 2002. Nevertheless, plaintiff's counsel proceeded to draft an affidavit for Miller to sign on September 26, 2002 that contained information directly contradicted by Miller's admission that he knew nothing of plaintiff's claims. While not relevant on a motion to dismiss, one would nevertheless expect plaintiff's counsel to at least have Miller explain why he agreed to sign an affidavit in direct contravention of his admission to having no information about the case.

[7] Proposed Amended Complaint, ¶87.

[8] *Id.*, ¶88.

District Office. Teachers whom Reiskin allegedly "wanted to see terminated" eventually "had charges brought against them."[9] This characterization reflects nothing more than the procedure a school board follows under Education Law §3020-a to terminate a tenured teacher. State law expressly permits the assignment of teachers to district offices to await the result of disciplinary proceedings.[10] "Charges" are those under the law that are heard by impartial hearing officers appointed by the State Education Department. If any teacher had indeed been targeted for improper treatment, as suggested by the Proposed Amended Complaint, it would be clear from the decisions of Section 3020-a hearing officers. Yet plaintiff does not allege a single instance in which a teacher brought up on charges was found to have been improperly treated.

The lone item of factual information offered by Miller is the allegation that Reiskin "blurted out" to Miller: "Don't you be concerned about [Wolin]; he's nothing but a drug addict.'"[11] This does not contribute to plaintiff's allegations of conspiracy. For it is already assumed, for purposes of this motion only, that Reiskin harbored animus towards plaintiff because of his drug addiction. However, mere animus -- and that is the sole inference that even the most charitable reading of plaintiff's proposed amended complaint permits -- does not make out a Section 1983 conspiracy cause of action.

The Proposed Amended Complaint thus does not alter the essential factual allegations upon which the motion to dismiss is based: 1) Reiskin provided accurate information to the Superintendent that plaintiff was in a drug rehabilitation facility while on sick leave for an unrelated illness; 2) the Board

---

[9] *Id.*, ¶¶89-90.

[10] *Adlerstein v. Board of Education*, 64 N.Y.2d 90 (1984).

[11] Proposed Amended Complaint, ¶94.

of Education's Special Commissioner of Investigation conducted an investigation into plaintiff's conduct; 3) prior to his discharge, plaintiff himself told the Board that he was in a drug rehabilitation program and had been dependent on drugs in the past; and 4) plaintiff had no contractual right to continued employment that could be enforced by the union defendants.

The proposed amendments therefore fail to address the thrust of the Union's motion to dismiss. As a matter of law, the provision of information by a private party to state actors cannot support an equal protection conspiracy claim. And where, as here, the UFT has no discretionary authority over plaintiff's employment, the UFT representative's personal opinion of the plaintiff is irrelevant to the claim of conspiracy. Plaintiff's allegations that the Union is "in bed" with the employer, and that a union representative revealed "confidential" information, smack of a state law breach of the duty of fair representation suit, not a conspiracy action. But a fair representation claim is long since time-barred, and plaintiff cannot resurrect it by dressing it in conspiracy clothes.

## POINT II

### PLAINTIFF'S FAILURE TO PLEAD SPECIFIC FACTS FROM WHICH A CONSPIRACY COULD BE INFERRED REQUIRES DISMISSAL OF HIS CLAIMS

A claim of conspiracy must be plead with factual specificity.[12] Despite plaintiff's argument to the contrary, this basic principle remains unaltered by the Supreme Court's decision in *Leatherman v. Tarrant County*.[13] As Judge Sifton noted in *Townes v. City of New York*:[14]

> certain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that, despite the general rule of *Conley v. Gibson*, detailed fact pleading is required to withstand a motion to dismiss. A claim of a conspiracy to violate civil rights is a clear example. This view is not altered by the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics, Intelligence and Coordination Unit*, which proscribes the application of a heightened pleading standard in civil rights cases. Post-*Leatherman* cases continue to hold that a claim of conspiracy must contain more than mere conclusory allegations to withstand a motion to dismiss. [internal quotations and citations omitted].

If *Townes* wasn't clear enough, Judge Sifton reiterated this point in *Washington v. Sheinberg*,[15] stating

> Although the Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit* rejected the heightened pleading requirement for claims brought pursuant to §1983, courts within this Circuit have construed that *Leatherman* does not alter the pleading requirements for conspiracy claims.

---

[12] *See Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981).

[13] 507 U.S. 163 (1993).

[14] 1996 U.S. Dist. LEXIS 20220 (E.D.N.Y. 1996).

[15] 1996 U.S. Dist. LEXIS 20236 (E.D.N.Y. 1996).

[citations omitted]. [16]

Nor does the Supreme Court's recent decision in *Swierkiewicz v. Sorema*[17] shield the plaintiff from pleading a conspiracy claim with specificity. *Swierkiewicz's* holding is limited to employment discrimination claims utilizing the *McDonnellDouglas* balancing test.[18] While Title VII and ADEA claims fall under this rubric, §1983 and §1985(3) conspiracy claims do not. First, the *McDonnell-Douglas* balancing test does not apply to conspiracy claims.[19] Second, courts in this Circuit have made clear that conspiracy claims were not intended to remedy employment discrimination; that function is served by Title VII.[20]

---

[16] Other courts in this Circuit have held similarly. *See Orange v. County of Suffolk*, 830 F.Supp. 701, 707-08 (E.D.N.Y. 1993)(Wexler, J.) ("Plaintiffs argue that this Court may not apply a 'heightened pleading standard' merely because this is a civil rights case alleging municipal liability under §1983. In *Leatherman,* however, the plaintiffs alleged only a civil rights violation under §1983 against the municipality; they did not allege a conspiracy between the municipality and its officers. It is the conspiracy charge in the instant case which requires more specific pleading. Leatherman does not change this requirement"); *see also*, *Burke v. Town of East Hampton*, 2001 U.S. Dist. LEXIS 22505 (E.D.N.Y. 2001) (In pleading §1985(3) claim,"plaintiffs must include specific instances of misconduct sufficient to meet each and every element of the charge").

[17] 534 U.S. 506, 122 S.Ct. 992 (2002).

[18] *Swierkiewicz*, 122 S.Ct. at 995.

[19] Indeed, a "section §1985(3) claim requires even more evidence than that necessary to successfully plead a Title VII violation." *Byars v. Jamestown Teachers' Association*, 195 F.Supp.2d 401, 418 (W.D.N.Y. 2002)

[20] *See Byars v. Jamestown Teachers' Association*, 195 F.Supp.2d 401, 418 (W.D.N.Y. 2002) ("case law provides that Title VII employment discrimination claims are not properly pursued under 42 U.S.C. §1985(3)"); *see also*, *Harris v. Niagara Mohawk Power Corp.,* 1998 U.S. Dist. LEXIS 22009, 20 (N.D.N.Y. 1998) (claim for "employment discrimination" not actionable under §1985(3)); *True v. New York State Dept. of Correctional Services*, 613 F.Supp. 27, 32 (W.D.N.Y. 1984) ("plaintiff has failed to plead a conspiracy regarding a federally protectable interest other than the discrimination in employment allegations which must be enforced under Title VII and not under section 1985(3)").

Just like *Leatherman* before it, *Swierkiewicz's* limited holding does not alter the pleading requirement for conspiracy claims. Plaintiff does not challenge the law set forth in the union defendants' main brief that a conspiracy is not established by alleging that a private party provided information to a state actor. The essence of this case is plaintiff's assertion of the right to mislead his employer by failing to disclose his drug dependency, and by hiding the fact that he used sick leave for a purpose not known or authorized by the employer. However, plaintiff has no right under federal law to lie to his employer, nor any right to expect others to cover for his lies. Providing accurate information to a state actor, regardless of the motive, does not make out a claim of conspiracy, and plaintiff's claims against the union defendants must therefore be dismissed on this ground alone.

## POINT III

## PLAINTIFF'S ALLEGATIONS ESTABLISH AS A MATTER OF LAW THAT HIS ALLEGED INJURIES WERE NOT PROXIMATELY CAUSED BY DEFENDANTS UFT AND REISKIN

Plaintiff's assertion that proximate causation is not an element of a conspiracy claim is wrong.[21] The courts have acknowledged that conspiracy claims under both §1983 and §1985(3) are a conspicuous species of tort law.[22] Causation is a necessary element of a tort cause of action. This includes proximate, or legal, cause, as well as cause in fact analysis. The fact that this implicit requirement is rarely discussed by federal courts might explain plaintiff's misguided interpretation of the law. The Ninth Circuit noted over 20 years ago that:

> Causation is a concept that is not often discussed or explicitly stated in civil rights cases. When courts examine the elements of civil rights causes of action, they tend to focus on the substantive aspects of liability under the statutes. Although causation is not stated explicitly in these formulations, it is an implicit requirement ... The causation requirements of sections 1983 and 1985 is not satisfied by showing mere causation in fact. Rather, the plaintiff must establish proximate or legal causation.[23]

---

[21] *See* Plaintiff's Brief in Opposition, p. 17.

[22] *See Griffin v. Breckenridge*, 403 U.S. 88, 101-102 (1971); *see also*, *Upper Hudson Planned Parenthood, Inc. v. Doe,* 1991 U.S. Dist. LEXIS 13063, 27-28 (N.D.N.Y. 1991) ("Because section 1985(3) violations necessarily involve a conspiracy to involve another of rights, privileges and immunities, the underlying deprivations sound in tort") (quoting *Bougher v. University of Pittsburgh*, 882 F.2d 74, 79 (3d Cir. 1989)); *Jit Kim Lim v. Central Dupage Hospital*, 871 F.2d 644, 646 (7th Cir. 1989) ("Section 1985(3), creates a tort remedy for (so far as pertinent here) injuries to property causes by private conspiracies to infringe certain federal rights"); *Buenrostro v. Collazo*, 973 F.2d 39, 45 (1st Cir. 1992) ("the Supreme Court has made it crystal clear that principles of causation borrowed from tort law are relevant to civil rights actions brought under §1983").

[23] *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

Proximate cause is not necessarily a question of fact. Failure to allege proximate cause *can* be the basis for a 12(b)(6) dismissal.[24] More importantly, contrary to plaintiff's argument, defendants' motion in this case is not based on a failure to plead proximate causation. It is based on plaintiff's allegations of fact which compel the conclusion that the investigation of the Special Commissioner of Investigation and plaintiff's own admissions broke any causal chain between Reiskin's alleged anonymous communication on January 29, 2001, and plaintiff's discharge six months later.

Plaintiff contends that he has sufficiently alleged proximate cause, in that the "consequences of the UFT and Reiskin's acts were foreseeable."[25] To buttress his position, plaintiff relies on *Warner v. Orange County Dept. of Probation.*[26] In discussing *Warner*, plaintiff states:

> The court rejected the very concept now being advanced by defendants that any required 'chain' of causation is broken when a third party actually renders the determination. (Plaintiff's Brief in Opposition, p. 20).

Simply put, plaintiff misses the boat on this issue. The issue at bar is not whether the UFT could *foresee* a particular determination by the Board of Education, but whether the UFT exercised *discretionary authority* in causing that determination. Crucial to the *Warner* decision, as the Second Circuit pointed out in *Taylor v. Brentwood Union Free School District*,[27] was the exercise of *discretionary authority* by the probation department. It recommended a probationary program to the

---

[24] *See, Kelsey v. Muskin, Inc.,* 848 F.2d 39 (2d Cir. 1988) (affirming dismissal of complaint for failure to plead proximate cause), *cert. denied*, 488 U.S. 1030 (1989); *see also*, *Citibank v. Corporation*, 968 F.2d 1489, 1494-1496 (2d Cir. 1992).

[25] Plaintiff's Brief in Opposition, p. 21.

[26] 115 F.3d 1068 (2d Cir. 1997).

[27] 143 F.3d 679, 688 (2d Cir. 1998).

judge, and thereafter directed the plaintiff to attend the program, which caused the constitutional injury. Central to the Second Circuit's analysis, as it pointed out in *Taylor*, was the fact that the judge did not order the plaintiff's attendance.[28]

In this case, the facts do not support a claim that the union defendants exercised *any* discretionary authority over plaintiff's employment. All authority rests with the Board of Education. Plaintiff's claim that Reiskin could "reasonably foresee" that the Special Commissioner of Investigation would act unlawfully, and that the Board of Education itself would take unlawful action is absurd. But even if Reiskin harbored hopes that these two intervening entities, with full and complete authority over plaintiff, would act improperly, Reiskin had no more discretionary authority to make it happen than did the defendant principal who reported allegations of the plaintiff teacher's misconduct in *Taylor*.

Plaintiff's action must therefore be dismissed for the additional reason that the facts as he alleges compel the conclusion that the union defendants' alleged actions were not the proximate cause of his injuries.

---

[28] *Id.*

## CONCLUSION

For the foregoing reasons, and those stated in defendants' main brief, it is respectfully submitted that plaintiff's suit against the UFT and Marvin Reiskin should be dismissed with prejudice.

Dated: New York, New York
       October 8, 2002

                                      Respectfully submitted,

                                      JAMES R. SANDNER, ESQ.
                                      Attorney for UFT and Marvin Reiskin
                                      Office & PO Address
                                      260 Park Avenue South
                                      New York, NY  10010
                                      (212) 533-6300

                         By:        _____
                                      CONRAD W. LOWER, ESQ.  (CWL 5737)

CONRAD W. LOWER, ESQ.
Of Counsel