FILED
IN CLERKS OFFICE
U.S. DISTRICT CO'    N.Y:
★ OCT 1 6 2002 ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X

Richard Wolin,

                Plaintiff,      CV-02-3119 (CPS)

  - against -                  MEMORANDUM
                                                AND ORDER

New York City Board of Education
et alia,

                Defendants.

-------------------------------------X

SIFTON, Senior Judge.

      Plaintiff Richard Wolin ("plaintiff") brings this action against defendants the New York City Board of Education ("BOE") and the City of New York (collectively, the "municipal defendants"); John Q. Adams, Neal Opromalla, Thomas W. Hyland, Vincent Grippo, Thomas Pennell, and Theresa Europe, individually and as employees (collectively, the "individual defendants"); and the United Federation of Teachers ("UFT") and Marvin Reiskin, individually and as a representative (collectively, the "union defendants"). The complaint asserts claims under federal, state, and local anti-discrimination and civil rights statutes under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq., and in common law tort. Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, and other appropriate relief. The union defendants now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's federal

ECF #19

claims against them, arguing that the Court should decline jurisdiction over plaintiff's remaining state law claims. Plaintiff cross-moves under Federal Rule of Civil Procedure 15(a) for leave to amend the complaint in the event the Court grants the union defendants' motion. For the reasons stated below, defendants' motion is denied.

## BACKGROUND

For the purposes of the motion to dismiss, I assume the following facts alleged in the complaint to be true. *See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, (1993); *Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir. 1999); *In re Sterling Foster & Co., Inc., Securities Litigation*, 2002 WL 1394610, at *20 (E.D.N.Y. 2002). I will not consider any matters outside the pleadings submitted by either party and will not treat this motion as one for summary judgment. *See* Fed. R. Civ. P. 12(b)(6); *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). Only the facts relevant to the present motion will be discussed.

Plaintiff began working as a teacher for defendant BOE in or about September of 1988. He was assigned to the Christa McAuliffe Intermediate School, I.S. 187, in School Board District 20, where he received consistent satisfactory ratings up to the time of the events at issue in the complaint. While so employed, plaintiff was a member of UFT. During some undetermined portion

of this time period, plaintiff suffered from a long-term drug dependency.

On January 6, 2001, plaintiff was involved in a car accident and suffered serious physical injury. As a result, plaintiff telephoned defendant Adams, principal of I.S. 187, to inform him of the accident and of plaintiff's need of an extended leave. On January 23, 2001, plaintiff was informed in writing by the District 20 office that he would be required to take FMLA leave as of January 5, 2001. Plaintiff obtained a physician certification estimating that plaintiff would require approximately two months' leave, from January 6 to March 5, 2001.

Meanwhile, on January 21, 2001, plaintiff entered a three-week drug treatment program. On January 26, 2001, plaintiff, in a telephone conversation with defendant Reiskin, his union representative, told Reiskin about plaintiff's participation in the drug treatment program. On the next business day, January 29, 2001, BOE received an anonymous communication reporting that plaintiff had a drug dependency and was in a drug treatment facility. On January 30, 2001, defendant Pennell, Chief Investigator of the Special Commissioner of Investigation for the New York City School District ("SCI"), wrote to defendant Europe, Director of the Office of Special Investigations ("OSI"), informing her of the anonymous tip and requesting that she take action against plaintiff.

Plaintiff remained on leave after the completion of the drug treatment program in order to fully recover from the

injuries he sustained in the January 6 car accident. He was instructed to report for a physical examination on February 26, 2001, after which he was found fit to return to work and was instructed to report to the District 20 office to meet with defendant Grippo, District 20 Community Superintendent. Plaintiff met with Grippo on February 28, 2001, and was informed that he was under investigation, although the nature of the investigation was not revealed to him. Grippo told plaintiff that he was not satisfied with the results of the February 26 physical examination and instructed him to submit to another examination on March 27, 2001. Meanwhile, plaintiff was assigned to the District office rather than the classroom for work and was given no meaningful duties.

Plaintiff reported to the March 27 examination as instructed. While waiting to see the examining physician, a psychiatrist, plaintiff was given a copy of an SCI complaint form dated January 29, 2001. The complaint form referred to the anonymous tip of that date, which alleged that plaintiff was a heroin addict as of that date and was on sick leave while in a drug rehabilitation program. After the March 27 examination, plaintiff was found not fit to work and was scheduled to be re-examined after three weeks. On April 17 plaintiff was re-examined by a psychiatrist and found fit to return to the classroom, with re-evaluation to follow after two months. However, plaintiff was not reassigned to the classroom and

continued to be assigned to the District 20 office with no meaningful duties.

Plaintiff was instructed to report to a meeting on May 31, 2001, in Grippo's office. Present at the meeting were defendant Opromalla, special assistant to the Superintendent, and defendants Reiskin, Grippo, and Adams. The meeting was convened to discuss an OSI report detailing an investigation of plaintiff arising out of the anonymous tip. The report was in the form of a memorandum from a confidential investigator to defendant Hyland, Deputy Director of the Office of the Chancellor of the BOE. At the meeting, plaintiff admitted that he had attended a drug treatment facility and that he had previously suffered from a drug dependency problem but asserted that his treatment had been successful. A letter dated June 12, 2001, from the facility where plaintiff had undergone treatment confirmed plaintiff's assertion. On June 15, 2001, plaintiff was again found fit to work.

By letter dated June 21, 2001, plaintiff was informed that his position as a teacher was terminated, that he was being rated unsatisfactory, and that he was being placed on BOE's ineligible inquiry list, barring him from future employment at BOE. On or about February 19, 2002, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission,, and received a right to sue letter on or about March 14, 2002. Plaintiff filed a notice of claim and intention to sue against the municipal defendants on April 25, 2002, and the municipal

defendants did not make an adjustment or payment on plaintiff's claims within thirty days of that notice. Plaintiff filed the complaint in the present action on May 28, 2002.

DISCUSSION

Plaintiff asserts five claims for relief against the union defendants. His only federal claim for relief arises under 42 U.S.C. § 1985(3). Plaintiff alleges that the union defendants conspired with all the other defendants "for the purpose of depriving Plaintiff of equal protection of the laws or of equal privileges or immunities under the law" on account of his disability. (Compl. ¶ 129, 130.) Plaintiff also raises claims for relief under state statutory and common law. He alleges that the union defendants violated the New York Human Rights Law ("NYHRL") and the New York City Administrative Code ("NYCAC") in that they aided and abetted the municipal defendants' discriminatory actions against him or incited, compelled, or coerced the municipal defendants to violate the NYHRL and the NYCAC, or that they attempted to do so. Plaintiff also asserts common law claims for relief based on intentional infliction of emotional distress, defamation, and prima facie tort. The union defendants move to dismiss plaintiff's claims against them on three grounds. First, they argue that plaintiff has not pled sufficient facts to support a claim of conspiracy against them. Second, they argue that defendant cannot establish that their actions proximately caused plaintiff's injury. Third, they argue that, once plaintiff's federal law claim against them has been

dismissed, the Court should decline to exercise jurisdiction over plaintiff's remaining state law claims.

In considering a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint liberally, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Id.* (internal quotation marks and citation omitted). This standard is particularly strict in cases alleging civil rights violations. *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991).

## Sufficiency of Complaint on § 1985(3) Claim

The Federal Rules of Civil Procedure set forth a liberal pleading standard. Generally, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of the complaint is merely to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *See Leatherman*, 507 U.S. at 168; *Conley v. Gibson*, 355 U.S. 41, 47 (1957). However, the Second Circuit has adopted heightened pleading requirements in actions alleging a conspiracy to violate civil rights. *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981). In such cases, fact pleading is

required. *Id.; see also White v. Frank*, 680 F. Supp. 629, 639 (S.D.N.Y. 1988).

Plaintiff argues that the Supreme Court's recent decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), combined with its decision in *Leatherman*, 507 U.S. 163, overrules cases such as *Angola* which impose a heightened pleading standard in civil rights conspiracy actions. The Court in *Swierkiewicz* overruled Second Circuit precedent requiring that plaintiffs in Title VII and ADEA employment discrimination actions plead the elements of a prima facie case under the standard set down in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). In *Leatherman*, the Court struck down the Fifth Circuit's heightened pleading requirement in Section 1983 actions alleging municipal liability. There is certainly language in these cases to suggest that fact pleading may only be required under Federal Rule of Civil Procedure 9(b), where a complaint alleges fraud or mistake. *See Swierkiewicz*, 534 U.S. at 998-99; *Leatherman*, 507 U.S. at 168. However, the Supreme Court ruled directly only on the issue of heightened pleading requirements with respect to municipal liability under Section 1983 and employment discrimination under Title VII and the ADEA. District courts in this Circuit continue to require plaintiffs to plead their allegations of conspiracy to violate civil rights with factual specificity. *See, e.g., Delbene v. Alesio*, 2001 WL 170801, at *10 (S.D.N.Y. 2001); *Pollack v. Nash*, 58 F. Supp. 2d 294, 300 (S.D.N.Y. 1999). Absent a direct ruling from the Supreme Court on the Second Circuit's

requirement that plaintiffs who allege conspiracy to violate civil rights plead the facts of their claims with particularity, this Court will continue to follow Second Circuit precedent.

Defendants analyze plaintiff's federal claim as a Section 1983 conspiracy. While it is true that private parties may be held liable under Section 1983 if they conspire with public officials to deny a plaintiff some federally protected right, *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), plaintiff does not include the union defendants in his Section 1983 claim. Rather, he separately alleges a Section 1985 conspiracy in which all defendants participated. It would thus be inappropriate to dismiss his Section 1985 claim based on the insufficiency of his Section 1983 claim, as defendants suggest. (*See* Union Defs.' Mem. Supp. Mot. to Dismiss 5 & n.27); *Ferran v. Town of Nassau*, 11 F.3d 21, 23 (2d Cir. 1993), *cert. den.*, 513 U.S. 1014 (1994) (dismissing as unnecessary plaintiff's Section 1985 claim because it merely duplicated a part of plaintiff's Section 1983 claim, which survived a motion to dismiss). For purposes of the present motion, Section 1985 and the case law interpreting it provide the relevant standards.

Section 1985 provides a right of action where —
> two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy

set forth in this section, if one or more persons
engaged therein do, or cause to be done, any act in
furtherance of the object of such conspiracy, whereby
another is injured in his person or property, or
deprived of having and exercising any right or
privilege of a citizen of the United States.....

42 U.S.C. § 1985(3). To state a cause of action under this section, a plaintiff must allege four elements: (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property or a deprivation of a right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102-03, (1971); *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

With respect to the first element, "[a] conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Thomas*, 165 F.3d at 146 (citation and internal quotation marks omitted). Plaintiff alleges that all the defendants "acted in concert to try and eliminate teachers who had suffered in the past from drug dependencies." (Compl. ¶ 131.) He alleges that the union defendants secretly communicated with the other defendants as part of a plan to terminate him on grounds of his disability and that the municipal and individual defendants terminated him as a part of the conspiracy. He has set forth detailed facts concerning the employment actions taken against him and the

participation of all defendants in those actions. Furthermore, although he does not specifically allege that the anonymous tip of January 29 came from defendant Reiskin, plaintiff's description of the circumstances surrounding the anonymous tip, combined with his allegation of secret communications between the union defendants and the other defendants, gives rise to a reasonable inference that Reiskin was the source. These allegations, taken together, could reasonably give rise to an inference that the defendants tacitly or explicitly agreed to terminate plaintiff because of his former drug dependency. Thus, under the standards applicable to a Rule 12(b)(6) motion to dismiss, plaintiff has satisfactorily alleged the first element of a claim under Section 1985(3).

With respect to the second element of a valid claim, courts have consistently held that the alleged conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102. It is unclear whether a classification other than one based on race can provide the basis for a Section 1985 claim. Although the Supreme Court has left open the possibility that some other class-based discriminatory animus might qualify, it has never so held with respect to any classification other than race. *See, e.g., Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) ("Women seeking abortion is not a qualifying class." (internal quotation marks omitted)); *United Bhd. of Carpenters and Joiners of Am., Local*

*610 v. Scott*, 463 U.S. 825; 838 (1983) (holding that associations based on commercial or economic interest do not qualify as a class for purposes of Section 1985). Defendants, relying on their analysis under Section 1983, do not argue that disability does not qualify for protection from class-based animus under Section 1985, nor do they address whether plaintiff's drug dependency constitutes a disability at all. *Compare Trautz v. Weisman*, 819 F. Supp. 282 (S.D.N.Y. 1993) (finding that individuals with disabilities may be protected); *with D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474 (7th Cir. 1985) (finding handicapped persons not protected); *Wilhelm v. Continental Title Co.*, 720 F.2d 1173 (10th Cir. 1983), *cert. den.*, 465 U.S. 1103 (same). Because issue has not been joined with respect to the question, I decline to dismiss on the ground that plaintiff has failed to plead the second element of a Section 1985 claim.

The third element of a Section 1985 claim requires plaintiff to "allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy." *Thomas*, 165 F.3d at 147. Here, as noted above, plaintiff has alleged that the union defendants "secretly communicated" with the other defendants in furtherance of the alleged conspiracy. These secret communications can be inferred to include the anonymous tip referred to numerous times in the complaint. Plaintiff has also alleged the union defendants' participation in meetings at

which adverse employment action against him was taken. These allegations are sufficient to survive a motion to dismiss.

Finally, plaintiff has satisfied the fourth and final element of a Section 1985 claim regarding damages. Plaintiff's complaint includes numerous allegations of injury to person and property as a result of the conspiracy. (*See, e.g.*, Compl. ¶¶ 132, 136.) Plaintiff's Section 1985 claim is therefore sufficient to survive the present motion to dismiss.

### Proximate Cause

The union defendants further argue that plaintiff's federal claim against them should be dismissed because the intervening acts of the BOE investigation and plaintiff's admissions concerning his former drug dependency and treatment preclude a finding that their acts proximately caused plaintiff's injuries. Plaintiff argues in response that proximate causation is not an element of a conspiracy claim under Section 1985(3) and that, even if it were, proximate cause is a factual issue inappropriate for consideration on a motion to dismiss under Rule 12(b)(6).

As a preliminary matter, contrary to plaintiff's argument, there is authority that a plaintiff must establish proximate causation on a Section 1985(3) claim. *See, e.g., Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Agugliaro v. Brooks Bros., Inc.*, 802 F. Supp. 956, 961 (S.D.N.Y. 1992) (quoting *Richards v. New York State Department of Correctional Services*, 572 F. Supp. 1168,

1174 (S.D.N.Y. 1983)); *Bodenmiller v. Stanchfield*, 557 F. Supp. 857, 860 (S.D.N.Y. 1983). However, "[i]ssues of proximate cause are normally questions of fact for the jury to decide, unless the court concludes that a reasonable jury could reach only one conclusion." *Packer v. Skid Roe, Inc.*, 938 F. Supp. 193, 196 (S.D.N.Y. 1996). On a motion to dismiss under Rule 12(b)(6), the Court's role is not to weigh evidence but to determine whether there is any possibility that plaintiff will be able to prove facts that will entitle him to relief. *See Chambers*, 282 F.3d at 152. Given the factual allegations in the complaint, particularly with regard to communications between the union defendants and the other defendants, it is certainly possible that plaintiff will be able to prove facts sufficient to convince a reasonable juror that the union defendants' actions proximately caused plaintiff's injuries. Defendants' motion on this ground is therefore denied.

### State Law Claims

Because I am denying defendants' motion to dismiss plaintiff's federal claim against them, their argument that I should decline to retain supplemental jurisdiction over plaintiff's state law claims is misplaced. *See* 28 U.S.C. § 1367(c). The motion is therefore denied.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is denied. In light of this ruling, I have no occasion to consider plaintiff's cross-motion.

The Clerk is directed to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated :   Brooklyn, New York
         October \(\ , 2002

                                                            ict Judge