UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

RICHARD WOLIN,

        **Plaintiff,**

        -v-

THE NEW YORK CITY BOARD OF EDUCATION,     CV-02-3119 (CPS) (MDG)
THE CITY OF NEW YORK, AND JOHN Q. ADAMS,
NEAL OPROMALLA, THOMAS W. HYLAND
VINCENT GRIPPO, THOMAS PENNELL AND
THERESA EUROPE Individually and as employees,
UNITED FEDERATION OF TEACHERS, and
MARVIN REISKIN, individually and as a representative,

        **Defendants.**
------------------------------------------------------------------------X

## UNION DEFENDANTS' MEMORANDUM IN
## OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

**JAMES R. SANDNER, ESQ. (0360)**
**Attorney for Union Defendants UFT and Marvin Reiskin**
**Office & PO Address**
**260 Park Avenue South**
**New York, NY 10010-7214**
**(212) 533-6300**

**CONRAD W. LOWER, ESQ. (5737)**
**NEIL J. DUDICH, ESQ. (8459)**
  **Of Counsel**

TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| STATEMENT OF FACTS | 2 |
|     The Allegations Of The Complaint | |
|     The UFT Defendants' Representation Of Plaintiff In Challenging His Termination | |
|     The UFT's Representational Structure And Record-Keeping | |
| ARGUMENT | |
|     POINT I | |
|     The Discovery Should Be Denied As Irrelevant | |
|     A.  The UFT-Wide Discovery Sought By Plaintiff Should Be Denied As Irrelevant | |
|     B.  Discovery Of UFT Records Concerning Discipline And Other Employer Actions Against UFT Members in Community School District No. 20 Should Be Denied Because The Records Are Irrelevant To Plaintiff's Claims Against The UFT. | |
|     POINT II | |
|     The Discovery Should Be Denied Because It Would Be Extremely Burdensome To Obtain The Documents, And Discovery Of The Documents May Be Conveniently Obtained From The Board of Education | |
|     POINT III | |
|     Assuming, Arguendo, That Discovery Is Warranted, All Discovery Should Be The Subject Of A Protective Order To Protect The Privacy Of The UFT's Members, And The State Law Union Member/Representative Privilege | |
| CONCLUSION | 14 |

# PRELIMINARY STATEMENT

Plaintiff's complaint against defendants United Federation of Teachers and UFT representative Marvin Reiskin is that in January 2001, Reiskin disclosed to plaintiff's employer the fact that plaintiff was undergoing drug rehabilitation. Effective June 20, 2001, plaintiff was terminated by the Board of Education for absenteeism.

The subject of this brief is plaintiff's motion to compel discovery of three categories of documents as framed in his March 28, 2003 letter to the Court. At the April 21, 2003 discovery conference, the Court requested that counsel for union defendants and the plaintiff attempt to resolve the dispute informally, and that counsel for union defendants inform the Court of the status of the issues by Friday, April 25th.[1] Union defendants request that the Court accept filing of this memorandum and accompanying declarations *nunc pro tunc*. The additional day was necessary because the schedules of counsel did not permit confirmation of the scope of the dispute until April 28th, and additional time was necessary to obtain the facts set forth in the accompanying declarations.[2]

---

[1] At the April 21st discovery conference, the Court requested counsel for the plaintiff to mail copies of the relevant discovery demands to the Court. Copies of the relevant documents are therefore being sent by express mail to the Court and the parties under cover entitled "Union Defendants' Appendix of Materials related to Plaintiff's Motion to Compel" (hereafter "Appendix").

[2] Accompanying this memorandum are two declarations, both signed and dated April 28, 2003: "Declaration of Marvin Reiskin In Opposition To Plaintiff's Motion To Compel Discovery", and "Declaration of Catherine Garner In Opposition To Plaintiff's Motion To Compel Discovery." Copies of the declarations are included in the Appendix.

The plaintiff seeks discovery of the second and third categories of documents set forth in his March 28, 2003 letter.[3] Among the hundreds of pages of documents produced by the union defendants are all documents referring to plaintiff.

The first category of documents that are the subject of the plaintiff's motion to compel are all documents in the UFT's possession related to drug addition, rehabilitation and disability discrimination. Union defendants have responded in full to those requests with regard to UFT members employed in Community School District No. 20, where plaintiff was employed. Union defendants object to the UFT-wide discovery on the grounds of relevance and burdensomeness. The case law is clear that discovery should be limited to the functional unit in which plaintiff was employed, or to employees supervised by the same supervisor, absent a showing of a particularized need for, and the likely relevance of broader information. The cases also hold that a plaintiff's bald assertion of the need to show a "pattern" of discrimination, as is the case here, is insufficient to expand the scope of discovery.

The second category of documents requested by plaintiff refers to documents maintained by the UFT on members employed by the Board of Education in its Community School District No. 20 (CSD20). Plaintiff seeks all documents relating to absenteeism, discipline, reassignment, transfer, placement, and hiring. Union defendants object to the discovery on the grounds that: 1) it is irrelevant to plaintiff's complaint against the union defendants; 2) such documents may easily be obtained from the Board of Education, the entity that took the personnel actions; and 3) it would be extremely burdensome to require the UFT to comb through the approximately 4,000 files in its Brooklyn office to sort out the files of members employed in CSD20, and then to further sort out

---

[3] The document requests in the first category have been fully satisfied. *See*, Union defendants' April 28, 2003 to plaintiff's counsel, attached as Exhibit E to the Appendix.

the files relating to the categories demanded by the plaintiff. The facts set forth in the accompanying declarations establish that the disputed documents are irrelevant, and would be burdensome in the extreme to produce.

Finally, this memorandum argues that if discovery is permitted, it should be allowed only under conditions that minimize the burden on the UFT, and that protect the UFT members' rights to privacy and communications privileged under the state law union member/representative privilege.

# STATEMENT OF FACTS

<u>The Allegations Of The Complaint</u>

The Board fired plaintiff for absenteeism in June 2001. Plaintiff claims that union defendant Marvin Reiskin set the firing in motion in January 2001 when he allegedly told the Board that plaintiff was in a drug rehabilitation center. Between January and June 2001, plaintiff continued to be employed, but was either absent because of illness, or assigned to the District 20 headquarters pending the results of an investigation conducted by the Board.

In June 2001, plaintiff was issued an unsatisfactory annual rating, and notified that he was terminated for excessive absenteeism. As a result of the termination, plaintiff was placed on the Board's "Ineligible Inquiry List." The Ineligible Inquiry List is a list of persons who may not be employed by the Board of Education, and is maintained on the Board's computer system to alert Board employees in other districts.

As against the Board of Education, plaintiff claims that the Board's stated reason for discharge – absenteeism – was a mere pretext, and that a motivating factor in his discharge was his drug addiction/rehabilitation and/or his seeking leave under the Family Medical Leave Act (Complaint, ¶69, ¶112). Thus, plaintiff's First Cause of Action against the Board includes the claim that "other teachers who had similar numbers of absences ... were not terminated, rated unsatisfactory or barred from further employment." (Complaint, ¶89).

As against the union defendants, plaintiff's complaint is that Reiskin "engaged in a concerted effort to cause Plaintiff's dismissal as a teacher" with the Board of Education (Complaint, ¶70). This was allegedly accomplished by Reiskin informing the Board that plaintiff was in a drug rehabilitation center, whereas plaintiff had informed the Board that he was off work recovering from

an automobile accident (Complaint, ¶28-38). In particular, plaintiff alleges that the UFT and Reiskin and the Board of Education "acted in concert to try and eliminate teachers who had suffered in the past from drug dependencies. The UFT and Reiskin secretly communicated with the City and Board of Education as part of a plan to eliminate Plaintiff as a teacher on account of his disability." (¶131).

The complaint alleges five causes of actions against the UFT and Reiskin: 1) "aiding and abetting" the Board of Education's violation of the New York State Human Rights Law prohibiting disability discrimination (¶118); 2) conspiring with the Board of Education to deprive plaintiff of his alleged equal protection right to be free from disability discrimination (¶129); 3) intentional infliction of emotional distress, 4) defamation and 5) prima facie tort.

### The UFT Defendants' Representation Of Plaintiff In Challenging His Termination

While plaintiff complains that Reiskin improperly revealed confidential information about his drug rehabilitation to the Board in January 2001, he does not complain of the UFT's representation in connection with his discharge. As set forth in the accompanying Declaration of Marvin Reiskin, Reiskin had no involvement in plaintiff's representation concerning the Board's actions in connection with his termination.

The Board took action terminating plaintiff's employment effective the end of June, 2001. This was effected by: 1) issuing plaintiff an unsatisfactory annual rating, known as a "u-rating"; 2) advising plaintiff of his termination by letter; and 3) placing plaintiff's name on the Board of Education's "Ineligible Inquiry List" (hereafter referred to as the List). Placement on the List assures that no other Community School District or office of the Board of Education will hire

plaintiff in the future. Since plaintiff was not a tenured employee, he was not entitled to the protections of Education Law Section 3020-a prior to being terminated. Reiskin Declaration, ¶7.

A non-tenured teacher such as plaintiff is entitled to challenge the actions of the Superintendent in one or both of two ways. First, the member may challenge the u-rating before a Board-appointed hearing officer. The UFT provides the teacher with a representative for such challenges. Second, the member may challenge his placement on the List by demanding a hearing pursuant to Chancellor's Circular 31. The UFT provided an attorney at no cost to a member who wished to pursue a challenge under Circular 31. Reiskin Declaration, ¶8.

In the case at bar, plaintiff was provided with UFT representative Ellen Sherman to represent him in his challenge to the u-rating. Plaintiff makes no claim that Ms. Sherman's representation was deficient in any respect. Reiskin had no involvement in the u-rating appeal. Reiskin Declaration, ¶9. Plaintiff was also provided with an attorney at no cost to him for the Circular 31R proceeding to challenge his placement on the List and resulting ban from future employment with the Board of Education. Plaintiff makes no allegation that the UFT-provided attorney's representation was deficient in any respect. Similar to the u-rating appeal, Reiskin had no involvement in the Circular 31R appeal. Reiskin Declaration, ¶10.

<u>The UFT's Representational Structure And Record-Keeping</u>

The UFT has approximately 80,000 members city-wide. Approximately 2,500 are employed in CSD20. Reiskin Declaration, ¶4. CSD20 is one of 12 community school districts in Brooklyn. Garner Declaration, ¶2. It consists of 29 elementary and intermediate schools in several Brooklyn neighborhoods. Reiskin Declaration, ¶4.

The UFT organizational structure reflects in large part the Board of Education's functional and geographic structure. The union's members in a community school district are represented by a single District Representative responsible solely for the members in that community school district. Reiskin Declaration, ¶5. Marvin Reiskin has been the District Representative in CSD20 for the past 22 years.

The Brooklyn Borough Office of the UFT houses the union representatives responsible for representation of members employed by the Board of Education in Brooklyn. The Borough Office maintains files created by union representatives in the course of their duties. There are 4,081 files covering the period from 1997 to the present. Garner Declaration, ¶4. These files include files on grievances, u-ratings, and discipline. The files are maintained in alphabetical order by the name of the union member. To separate out files by community school district, it would be necessary to review each file stored in the Borough Office. Garner Declaration, ¶3.

# ARGUMENT

## POINT I

<u>The Discovery Should Be Denied As Irrelevant</u>

In determining whether discovery is warranted, "the first step in the process is deciding whether requested material is discoverable, that is, whether it is relevant and not privileged." *Jones v. Goord*, 2002 U.S.Dist.LEXIS 8707 (S.D.N.Y. 2002). In this case, all documents referring to plaintiff have been produced, and all documents concerning the UFT's practices and policies in the representation of employees have been produced. The categories of documents that are the subject of the plaintiff's motion have nothing to do with plaintiff's complaint against the union, and to the extent they are relevant to plaintiff's complaint against the Board of Education defendants, they are cumulative of records that should be obtained from those defendatns.

  A.  The UFT-Wide Discovery Sought By Plaintiff
      Should Be Denied As Irrelevant.

The UFT-wide documents sought are "communications" since 1996 concerning union member drug use or dependency, or participation in a drug rehabilitation program (Requests 6, 7.e), documents referring to adverse employment actions taken against a union member where an allegation of drug use or dependency or participation in a drug treatment or rehabilitation program has been made (Requests 21, 38); and union members' complaints, lawsuits and claims against the UFT alleging disability related discrimination or constitutional violations (Requests 35-37). Union defendants have already complied with plaintiff's requests with regard to union members in CSD20, where plaintiff was employed.

The law is clear that plaintiff's requests for UFT-wide documents exceed the scope of relevant discovery. Plaintiff's failure to show a particularized need for discovery beyond CSD 20

requires denial of his motion. *Chavez v. Daimler Chrysler Corp.*, 206 F.R.D. 615, 620-21 (S.D. IN 2002); *Davis v. Precoat Metals*, 202 U.S.Dist.LEXIS 13851 (N.D. ILL 2002) *Robbins v. Camden City Board of Education*, 105 F.R.D. 49, 63 (D. NJ 1985).

In *Chavez*, the plaintiff sought discovery outside the plant where he worked to support his age discrimination complaint. The court held that:

> discovery is usually limited to information about the employees in the same department or office absent a showing of a more particularized need for, and the likely relevance of, broader information. *Chavez,* 206 F.R.D. 615, 620 (citing cases).

The court in *Chavez* also noted the rule that discovery should be limited to records of employees supervised by the same supervisor as the plaintiff's. *Id.* In the case at bar, the relevant functional unit is that of Community School District No. 20. Union defendant Reiskin's responsibility is limited to CSD20, and plaintiff does not complain of any action by any other UFT representative, much less one outside of CSD20.

Plaintiff's assertion in his March 28, 2003 letter that plaintiff needs to show a "pattern" of misconduct does not justify access to UFT-wide discovery. As the court held in *Chavez*, "[a]lthough Chavez alleges a pattern of discrimination due to his age, this bald assertion, standing alone, is insufficient to expand the scope of discovery." *Chavez,* 206 F.R.D. 615, 620.

    B.    Discovery Of UFT Records Concerning Discipline And Other Employer Actions Against UFT Members in Community School District No. 20 Should Be Denied Because The Records Are Irrelevant To Plaintiff's Claims Against The UFT.

Documents sought by the plaintiff that are limited to those of UFT members employed in Community School District No. 20 concern actions by the Board of Education against teachers relating to absenteeism (Requests 2, 3, 40); "the placement, transfer, reassignment or hiring of

employees" for a six year period (Request 20.c); teachers "subjected to discipline or adverse employment action" for any reason (Request 22.h); and teachers removed from teacher duties and reassigned to the District Office (Request 22.k).

Plaintiff claims that the Board's stated reason reason for discharge – absenteeism – was a mere pretext, and a motivating factor in his discharge was his drug, addiction and/or his seeking leave under the Family Medical Leave Act. Absenteeism records of teachers employed in CSD20 are therefore presumably relevant to plaintiff's claim against the Board to show that similarly situated other employees were treated differently.

As against the union defendants, however, absenteeism records are only relevant to the extent that the union failed to take action, or took improper action, in response to the actions of which plaintiff complains. Plaintiff makes no claim that the union's response was inadequate, much less improper, in any way.

The facts establish that plaintiff was treated identically to other UFT members with regard to the representation afforded him to challenge the u-rating and placement on the Ineligible Inquiry List. Every employee has a right to a u-rating appeal, and every member is provided with a union represenative for the appeal proceeding. Similarly, every member was entitled to a Circular 31 proceeding to challenge placement on the Ineligible Inquiry List, and every member was provided with an attorney for this proceeding. Reiskin Declaration, ¶8. Plaintiff was treated identically to other union members in his situation with regard to both his u-rating and Circular 31 proceedings. Reiskin Declaration, ¶¶9, 10.

In this case, the union exercises no discretion in the level of representation to provide to those fired for absenteeism. Comparison with other cases will only show that those who wanted to

challenge their u-rating were given representatives -- just as plaintiff was -- and those who wanted to challenge their placement on Ineligible Inquiry List were given attorneys -- just as plaintiff was.

In summary, the records maintained by the UFT have no relevance to the plaintiff's claims against the UFT. They may be relevant to the plaintiff's claims against the Board, but only because they reflect Board actions against other employees. Yet it is obvious that records of Board actions against other employees are most completely and conveniently obtained from the party that took such action.[4]

---

[4] It should be noted that records maintained by the UFT only reflect Board actions against teachers who choose to challenge such actions. Thus, even if the UFT were required to engage in the onerous task of sifting through thousands of documents for records of the Board's actions, the result would only be a partial picture of such actions.

POINT II

The Discovery Should Be Denied Because It Would Be Extremely
Burdensome To Obtain The Documents, And Discovery Of The
<u>Documents May Be Conveniently Obtained From The Board of Education</u>

Rule 26 provides that the court shall limit the frequency or extent of the use of discovery:

> If it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation ...

The Supreme Court has held that "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598, 140 L.Ed.2d 759, 118 S.Ct. 1584 (1998). Thus, even if the requested material is discoverable, "the Court still has considerable discretion to evaluate the practical realities of discovery, balancing the importance of the information against the burden of production to decide whether fairness does or does not require production, and if so, on what terms." *James v. Goord*, 2002 U.S.Dist.LEXIS 8707, *17 (S.D.N.Y. 2002).

In this case, it has been demonstrated that the documents maintained by the UFT on its members have no relevance to the plaintiff's complaint against the union defendants. Since plaintiff does not complain about the UFT's representation of him in connection with his u-rating and Circular 31R proceedings, records of other union members on those subjects have no bearing on plaintiff's claims.

But even if the UFT member files were deemed relevant, the Court should deny discovery on the grounds that the discovery sought is unreasonably cumulative or duplicative because it is obtainable from the Board, and because the extreme burden of obtaining the information is not justified by the needs of the case, and the importance of the issues at stake in the litigation.

As set forth in the Garner Declaration, to obtain the information from the files of UFT members employed in CSD20 sought by the plaintiff would require sifting through over 4,000 files in the Brooklyn Borough Office. Indeed, it would require not only sifting through the files once to obtain the CSD20, files, it would require sifting through the CSD20 files to identify files related to absenteeism and the actions of the Board of Education that is the subject of plaintiff's request. Such onerous work would require the expenditure of countless hours to no purpose. Such a burden should be imposed on the UFT in this case.

POINT III

Assuming, Arguendo, That Discovery Is Warranted, All Discovery Should
Be The Subject Of A Protective Order To Protect The Privacy Of The
UFT's Members, And The State Law Union Member/Representative Privilege

If the Court orders discovery that would require disclosure of the files of UFT members, the Court should make such discovery conditioned on plaintiff's identification of specific files of specific individuals that are relevant to his claims. In addition, the Court should enter a protective order to protect the members' privacy, and to safeguard the communications protected by the state law union member/representative privilege.

Specifically, the Court should order the plaintiff to obtain the names of employees from the Board that plaintiff considers relevant. If plaintiff has grounds to believe that he was treated differently by the UFT than any of the identified individuals, plaintiff should provide union defendants with the names of the individuals, and the grounds for plaintiff's belief that the UFT engaged in disparate treatment or other unlawful conduct with regard to such individuals.

If records for such individuals exist, the Court should order the redaction of information to protect the privacy of the members. In accordance with the procedure outlined in *Davis v. Precoat Metals*, 2002 U.S.Dist.LEXIS 13851, *12-13 (N.D. ILL 2002), the Court should order following information redacted: unlisted addresses and telephone numbers, social security numbers, marital status, medical and health insurance information, criminal history, and credit information.

The Court should assure that the union member / representative privilege recognized under New York law is protected. Under New York law, communications made by a union member to his representative for the purpose of obtaining advice about matters that are within the union representatives' representational function are privileged from disclosure. *Seelig v. Shepard*, 152

Misc.2d 699, 702 (N.Y. Co. Sup. Ct. 1991). *City of Newburgh v. Newman*, 70 A.D.2d 362 (3rd Dept. 1979). The Court should therefore direct that all references to communications between the member and the UFT concerning the subject matter of the advice sought by the member be redacted.

Finally, as in *Davis v. Precoat Metals*, 2002 U.S.Dist.LEXIS 13851 (N.D. ILL 2002) the Court should enter a protective order ensuring that the files will be limited to attorneys' eyes only and that they can be used only for purposes of this litigation.

## CONCLUSION

For the foregoing reasons, plaintiff's March 28, 2003 motion to compel should be denied in its entirety. If discovery is deemed warranted, such discovery should be limited to specific files of individuals identified by the plaintiff, and should be the subject of a protective order to protect the privacy of the UFT members and to safeguard the state law union member/representative privilege.

Dated: New York, New York
April 28, 2004

                                            Respectfully submitted,

                                            JAMES R. SANDNER, ESQ. (0360)
                                            Attorney for UFT and Marvin Reiskin

                                 By:      /s/
                                            CONRAD W. LOWER, ESQ. (CWL 5737)
                                            260 Park Avenue South
                                            New York, NY 10010-7214
                                            (212) 533-6300

NEIL J. DUDICH, ESQ. (8459)
 Of Counsel