May 5, 2003

Hon. Marilyn D. Go
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE: Richard Wolin v. New York City Board of Education, United Federation of Teachers, Marvin Reiskin et al.
    Docket No. CV 2002-3119(CPS)(MDG)

Dear Magistrate Go:

    This letter is respectfully submitted in response to defendant UFT and Reiskin's ("Defendants") belated response dated April 28, 2002 to my letter of March 28, 2003[1] regarding the discovery issues between the parties. For the reasons stated below and in plaintiffs letter of March 28, it is respectfully submitted that Defendants be directed to produce the requested documents.

**<u>DEFENDANTS' CLAIMS OF RELEVANCE</u>**

    The Supreme Court in *Griffin v. Breckenridge et al.*, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 1798-99, 29 L.Ed.2d 338 (1971) in evaluating the elements of a cause of action under 42 U.S.C. §1985(3)[2] held as follows:

---

    [1]Plaintiff finally received Defendants' memorandum on May 2, 2003 by fax having been unable to obtain the papers through the ECF, and after having requested several days earlier that the papers be faxed after pointing the problem out to Defendants' counsel.

    [2]42 U.S.C.1985(3), Conspiracy to interfere with civil rights, provides in relevant part as follows:
    If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is

> To come within the legislation a complaint must allege that the defendants did (1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of (the) conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'

It is well recognized that "the facts surrounding a conspiracy claim are usually not available to the plaintiff. "Thus, '[c]onspiracies are seldom proven with direct evidence'". *Long Island Lighting Co. v. Cuomo*, 666 F. Supp. 370, 426 (N.D.N.Y. 1987) (citation omitted), vacated in part on other grounds, 888 F.2d 230 (2d Cir. 1989)". *Townes v. N.Y.C.*, Dist. Ct. (E.D.N.Y., 1996)(Sifton J.)

Plaintiff has alleged that the UFT and the Board of Education have conspired to target a class of persons, and that they act in concert to facilitate the elimination of persons within that class. Defendants have studiously avoided producing any category of documents which might aid plaintiff in discovering facts relating to the existence of this conspiracy.

Plaintiff also seeks to discover and establish the mechanics of the conspiracy itself. Plaintiff is asserting that Reiskin from the UFT, on the one hand, and Grippo from the Board of Education, on the other hand, conspired to eliminate teachers whose elimination benefitted either the UFT or the Board, or worked to their mutual benefit by accomplishing their shared goals as in the case of the plaintiff, and that Defendants aided and abetted the City defendants in discriminating against him because he had suffered from a drug dependency.

One example of the way that the conspiracy functioned is believed to be as follows: The Board through the District Superintendent and/or the UFT through its district or other representative wish to eliminate a teacher for impermissible reasons. In the case of the plaintiff, the UFT representative obtains confidential information from the teacher who believes that his or her confidences will be preserved. The information is then relayed by the UFT representative to the District Superintendent. The teacher is then removed from his or her duties by the District Superintendent and required to report to the District Office, rather than to the school where the teacher had been assigned. The teacher is ultimately discharged, or assigned to a less desirable school, or forced to settle by agreeing to such a reassignment or to disposition by which the teacher voluntarily leaves or accepts retirement, if the later option is available.

The UFT representative at these early crucial stages, while going through the motions of

---

injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

appearing at meetings as required by the contract, would in reality have no interest in seeing the teacher prevail, and would do little to aid the teacher. For example, in the instant case, while defendant Reiskin attended the meetings required of him as a union representative, his participation was minimal. The UFT's true intentions were revealed when Reiskin was confronted by another UFT Chapter Leader, Arthur Miller, who asked why Reiskin was doing nothing in his capacity as plaintiff's UFT representative to aid plaintiff who was being forced to sit in the District Office day in and day out. Reiskin's response was "he's just a drug addict", apparently believing that Mr. Miller understood the UFT's tacit position and agreement when it came to persons with drug dependencies. (See Miller affidavit previously filed with the court).

The files and documents sought by the Plaintiff will aid plaintiff in discovering facts relating to the mechanics of the conspiracy as well as to the objectives of the conspiracy. It is respectfully submitted that the documents identified for production are one of the principal ways for plaintiff to establish the conspiracy and the manner in which that conspiracy functioned. Neither Mr. Grippo nor Mr. Reiskin, nor anyone else at the UFT or the Board are likely to freely admit what they are doing in connection with such a conspiracy, as co-conspirators rarely do. It is only through the files and documents requested can the full nature and scope of the conspiracy be known.

The documents sought are also discoverable under plaintiff's claims that Defendants aided and abetted the Board and other defendants in discrimination against plaintiff on account of disability. Clearly, the Defendants acts with respect to other persons within the class are relevant and discoverable, since such comparative information aids the plaintiff in the development of the case and establishing pretext. See *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 52 L.Ed 2d 396, 97 S.Ct. 1843 (1977); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05, 36 L.Ed. 2d 668, 93 S. Ct. 1817 (1973) *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990). Certainly, documents between Grippo and Reiskin and their efforts to aid each other in the elimination, discipline or transfer of teachers is relevant to discovering the nature and scope of the conspiracy.

Defendants insistence on the limitations to be imposed on discovery sets up a convenient road block impairing the ability of a plaintiff in civil rights actions to establish conspiracy and aiding and abetting claims. Plaintiff has alleged, *inter alia*, that the conspiracy and aiding and abetting actions target teachers such as the plaintiff who have suffered from drug related disabilities.

In denying Defendants' motion to dismiss the complaint, Judge Sifton observed that:

> With respect to the first element [of a claim under 42 USC §1985(3)], "[a] conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." Thomas [v. Roach], 165 F.2d 3d at 146 (citaion and internal quotation marks omitted). Plaintiff alleges that all the defendants "acted in concert to try and eliminate teachers who had suffered in the past from drug dependencies." (Compl. ¶131).

Yet the very documents that plaintiff seeks that may aid in the establishment of the UFT and Board's tacit agreement that teachers who are discovered to have had disabilities relating to drug dependancies be swept from the system, are claimed to be irrelevant by Defendants. It is fairly certain that the reason advanced for the elimination of such teachers will not be stated to be their past drug dependancies since both the UFT and the Board presumably know that such conduct would be unlawful. Instead, as with plaintiff, pretextual reasons such as absenteeism are used.

Records of the UFT and/or the Board that reveal the nature of the UFT's response in a case where there is evidence or knowledge of drug dependency, and which also reveal that such teachers are subjected to disciplinary action or termination, regardless of the actual reasons stated, would provide further circumstantial, and perhaps direct, evidence in the establishing both the conspiracy and aiding and abetting claims. Moreover, within District 20, files in which Reiskin was involved should be produced, as this is the only way that plaintiff can fully establish the scope of the conspiracy within District 20, the *modus operandi* of such conspiracy , and the ability of the plaintiff to effectively depose Reiskin, Grippo and others alleged to have participated in the conspiracy and to have aided and abetted with the discrimination of the plaintiff.

Defendants call for strict geographical limits is inappropriate. As noted in plaintiff's March 28 letter, since the UFT is charged with participating in the conspiracy and in aiding and abetting the Board in ridding the school system of a teacher with a particular type of disability, and where there is no claim by the UFT that the district representative acts independently in setting his or her own polices, or that the other districts are governed by a separate collective bargaining agreement, there is no basis for the restrictive discovery called for by defendants. See *Flanagan v. Travellers Insurance Co.*, 111 F.R.D. 42 (WDNY, 1986). Defendants concede that there is but one collective bargaining agreement and that the bargaining unit consists of all teachers in the New York City School District. Moreover, despite the submission by Defendants of two declarations of persons affiliated with the UFT including Reiskin, there is no claim that the District Representatives operate independent of the UFT's polices or practices within that city-wide collective bargaining unit.

In *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2nd Cir, 1990). The Second Circuit reversed the lower court's refusal to require to the defendants to produce company wide documentation holding that:

> Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive. ...
>
> Because employers rarely leave a paper trail--or "smoking gun"-- attesting to a discriminatory intent, see Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464-65 (2d Cir.1989) (citing cases); Dister v. Continental Group, Inc., 859 F.2d

1108, 1112 (2d Cir.1988), disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer.

It is respectfully submitted that defendants have confused the standard of relevance for discovery purposes with the standard of relevance under the Federal Rules of evidence. See *Lineen v. Metcalf & Eddy, Inc.*, 1997 WL 73763 (S.D.N.Y., 1997). As the court in Lineen summarized:

> The Supreme Court has instructed that plaintiffs in employment discrimination lawsuits may employ "liberal civil discovery rules" to obtain "broad access to employer's records" in order to generate a statistical ) analysis to show the disparate impact of an employer's personnel policies. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989). Accord Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 660 n.19 (11th Cir. 1993), reh'g en banc denied mem., 16 F.3d 1233 (11th Cir.), cert. denied, 115 S. Ct. 69 (1994); Abel v. Merrill Lynch & Co., 1993 WL 33348 at *2 (S.D.N.Y. Feb. 4, 1993). In a disparate treatment case, such discovery may also be important to develop data reflecting the intent behind the defendant's employment decisions and suggesting whether the defendant's justification for its challenged actions is pretextual. See, e.g., Taggart v. Time Inc., 924 F.2d 43, 46 (2d Cir. 1991); Hollander v. American Cyanamid Co., 895 F.2d 80, 84-85 (2d Cir. 1990) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-05 (1973)); Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 104 (2d Cir. 1989); Stanojev v. Ebasco Services Inc., 643 F.2d 914, 920-21 (2d Cir. 1981); Lieberman v. Gant, 630 F.2d 60, 68-69 (2d Cir. 1980). See also Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994)(noting significance of "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic ... on which an employer is forbidden to base a difference in treatment received systematically better treatment"); Abel, 1993 WL 33348, at *1. The fact that plaintiff is an individual alleging disparate treatment does not justify denial of access to information that may reflect patterns of discrimination. Both anecdotal and statistical evidence may be probative in this type of lawsuit. See, e.g., Taggart, 924 F.2d at 46 ("discrimination may be shown by direct evidence, statistical evidence, or circumstantial evidence"); Sumner v. U.S. Postal Serv., 899 F.2d 203, 210 (2d Cir. 1990); Stanojev, 643 F.2d at 921.
>
> In determining the limits of discovery, we must balance the plaintiff's need for the requested data against the burden imposed on the defendant. See, e.g., Scales v. J.C. Bradford & Co., 925 F.2d 901, 906-07 (6th Cir. 1991); Trevino v. Celanese Corp., 701 F.2d 397, 405-06 (5th Cir.), reh'g denied, 707 F.2d 515 (5th Cir. 1983; Mazzella v. RCA Global Communications Inc., 1984 WL 55541, at *8 (S.D.N.Y. Mar. 28, 1984); Zahorik v. Cornell Univ., 98 F.R.D. 27, 34-35 (N.D.N.Y. 1983). While balancing the relative needs and costs of discovery, we

are mindful that a "'plaintiff who must shoulder the burden of proving that the [defendant's explanations] are pretextual should not normally be denied the information necessary to establish that claim.'" Palmer v. Reader's Digest Ass'n, Inc., 122 F.R.D. 445, 446 (S.D.N.Y. 1988)(quoting Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978)). Accord In re Western Dist. Xerox Litig., 140 F.R.D. 264, 269 (W.D.N.Y. 1991); Flanagan v. Travelers Ins. Co., 111 F.R.D. 42, 47 (W.D.N.Y. 1986). See also Audrey v. United Parcel Serv., 798 F.2d 679, 684 (4th Cir. 1986), cert. denied, 480 U.S. 934 (1987); Trevino v. Celanese Corp., 701 F.2d at 405-06.

Also see *Khan v. Sanofi-Synthelabo, Inc.*, 2002 WL 31720528 (S.D.N.Y., 2002).

**DEFENDANTS' FAILURE TO PRODUCE THE REQUESTED DOCUMENTS**

Defendants, other than producing a few documents that relate to the plaintiff, and a few general documents, have carefully avoided the production of any documents that might shed any light on plaintiff's §1985 conspiracy or state aiding and abetting claims. Defendants have had six months to produce the requested documents.

Defendants' sweeping statement about their production of "hundreds of pages of documents" is misleading. The totality of Defendants documents production thus far is extraordinarily limited, consisting of the following: a few pages of handwritten notes of Reiskin's relating to the plaintiff (Exhibits A and B to Defendants' document production ); documents received from the Board in connection with plaintiff's appeal of his 'U-rating" and a medical examination (Exhibits C and D) a 1991 one page letter from plaintiff to the Board on an unrelated matter (Exhibit E), The UFT's Collective Bargaining Agreement with the City of New York (Exhibit F) three pages of the UFT's "constitution" which ends in the middle of a sentence, a few excerpts from the union's members newsletter (Exhibits G, H and I) and a single page copy of a wireless telephone bill for Reiskin with most entries redacted (Exhibit I).

Defendants' claim that it would be unduly burdensome to produce the requested documentation or that the documentation is irrelevant, self-serving, and conclusory, and is contradicted by their own submission to this Court. Defendants' extremely limited document production to date makes it abundantly clear that, being dissatisfied with Judge Sifton's Order denying dismissal of plaintiff's claims against the UFT and finding that a cause of action of a §1985 conspiracy was stated in the Complaint, Defendants are determined to avoid producing documents that might aid plaintiff in establishing his claims or documents that might lead to relevant information.

Moreover, Defendants' claim that production of the requested documents would be unduly burdensome is contradicted by the declaration of the Catherine Graner who describes herself as the Office Manager of the UFT's Borough Superintendents Office. Ms. Garner

expressly acknowledges that she has "reviewed the files maintained in the Brooklyn Office". Since Ms. Garner has already reviewed the files, clearly the claim that it would be unduly burdensome to do so is anomalous at best. Yet having reviewed those files defendants merely recite the total number reviewed without any explanation as to why the files requested have not been produced, nor have they clearly identified the burden, much less the extent of the burden with any specificity. See *Audrey v. United Parcel Service*, 798 F.2d at 684; *Lineen v. Metcalf & Eddy, Inc*., supra. at 7, *Avillan v. Digital Equipment Corporation*, 1994 WL 198771 at 4 (S.D.N.Y., 1994); *Perro v. Romano*, 1987 WL 7563 at 1 (E.D.N.Y., 1987)

Defendants claim that the files are maintained only in alphabetical order is meaningless since Ms. Garner has declared under the penalties of perjury that she has already reviewed the files. In any event, the Defendants' claim that they maintain their files in such a manner as to make discovery burdensome, is hardly a basis for refusing to disclose documents. According to defendants' attorneys' position, the UFT has no idea and cannot determine the types of disciplinary charges and negative employment actions that its members are being subjected to and which its' representatives are assisting members on. This is nothing short of an incredible position for a union to take. However, assuming that the UFT in fact has failed to maintain its files in such a way that prevents it from knowing in any meaningful way the prevalent types of charges being faced by its members, that is a self created burden and not an basis for non-disclosure.

It is also untenable for Defendants to urge that they only be required to produce files and documents based on what the City defendants produce, and it is ludicrous and contrary to the law as cited above, to require plaintiff to first identify those teachers' files that he believes to be relevant without being able to review the files.

Finally, Defendants' claim that the files will not reveal anything, not only suggests the extent that Defendants have already reviewed the requested files in contradiction of their claim of burdensomeness, but, with all due respect to Defendants, plaintiff is certainly not required to rely on his opposing parties' attorney's conclusory assurances that there is nothing that plaintiff needs or requires in those files. Moreover, Defendants request for a confidentiality order reveals that the files contain information that may in fact be probative of the issues raised herein.

**DEFENDANTS' REQUEST FOR A PROTECTIVE ORDER**

Plaintiff has no objection to entering into a confidentiality order regarding such personal details as may be contained in personnel files such as medical and health information and credit information. However, plaintiff objects to any order permitting or requiring the redactions of such information as such information may relate directly to the claims asserted herein, especially medical and health information which may involve a teacher's disability. It should be noted that despite their request, it is Defendants who have steadfastly refused to enter into a confidentiality agreement regarding plaintiff's medical information.

Similarly, Defendants request that all information given or received between a member

and a UFT representative be redacted on the grounds of privilege, would, if granted, defeat the very purpose of obtaining the information in the first place. Defendants supposed authority for such extraordinary relief is a 1979 New York state case *City of Newbugrh v. Newman*, 70 A.D.2d 362 (3rd Dept., 1979), where the court upheld the determination of Public Employment Relations Board that a police commissioner could not question a union officer concerning a union official's discussion with the union member about a pending disciplinary charge against the union member. In upholding the PERB's ruling, the court made clear that such ruling operates strictly in the circumstances presented in that case, and that any such privilege "operates only as against the public employer" and not third parties.

It is therefore troubling that defendants' counsel failed to cite to a later state appellate decision where he himself represented the union, in which the court's restrictive reading of *Newman* resulted in an order upholding a lower court order rejecting the claim of privilege and directing that the union officers and members testify at depositions. See: *Children's Village v. Greenburgh Eleven Teachers' Union Federation of Teachers, Local 1532*, 232 A.D.2d 356, 648 N.Y.S.2d 152 (2nd Dept., 1996) (Conrad W. Lower, of Counsel for the Union). Moreover, as the court recognized in the case cited by Defendants, *Seelig v. Shepard*, 152 Misc. 2d 699, 578 N.Y.S.2d 965 (Sup Ct., N.Y. Co., 1991), to the extent that any such privilege has been recognized, it is for the union member to assert, not the union.

However, more recently this court expressly rejected such a claim of privilege. See: *In re Grand Jury Subpoenas Dated January 20, 1998*, 995 F.Supp. 332 (E.D.N.Y, 1998) (rejecting claim of privilege between Police Benevolent Association representatives and its members). Here, it is respectfully submitted that Defendants seek to do nothing less than to carve out a broad disclosure exception against a class of unions in civil rights cases to immunize themselves from such claims. It is respectfully submitted that there simply exists no basis for relief, and that such a request reflects the Defendants' continued efforts to prevent plaintiff from obtaining meaningful disclosure from them.

**CONCLUSION**

It is respectfully requested that Defendants be directed to comply with plaintiff's outstanding document requests as identified in the Plaintiff's letter of March 28, 2003.

Thank you for your consideration.

Respectfully,

//s//

Mark H. Bierman
(MHB-4696)

cc: James R. Sander, Esq.
   New York State United teachers
   Attn.: Conrad W. Lower, Esq

   City of New York, Law Department
   Attn.: Barbara G. Lifton, Esq.

.