THE LAW OFFICES OF
# MARK H. BIERMAN
THREE NEW YORK PLAZA, 14TH FLOOR
NEW YORK, NEW YORK 10004

(212)-363-6960

May 15, 2003

Hon. Marilyn D. Go
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE: Richard Wolin v. New York City Board of Education et al.
    Docket No. CV 2002-3119(CPS)(MDG)

Dear Magistrate Go:

    This office represents the plaintiff in the above referenced civil action. Having been unable to resolve discovery disputes with the City Defendants, I am writing in accordance with Local Rule 37.3 to compel disclosure or obtain such additional relief as may be appropriate under the Fed. R. of Civ. Proc. . Since the cut-off for fact discovery has been set for June 13, 2003, and the depositions were scheduled to begin next week in the expectation of compliance with discovery, it is respectfully requested that the Court expedite this application.

## BACKGROUND

    Plaintiff's claims in the within action against the New York City Board of Education (the "Board"), the City of New York (the "City"), and various individual employees of the Board (all of the foregoing collectively referred to as the "City Defendants"), include, *inter alia*, civil rights claims under 42 USC §1983, §1985 and §1986 as well as discrimination claims under the ADA, the Rehabilitation Act, and the Family Medical Leave Act ("FMLA"), and under the New York City and New York State Human Rights Law. Plaintiff claims that defendants discriminated against plaintiff on account of his disability involving past drug dependency, and otherwise conspired to and did deprive him of his constitutional rights.

    Plaintiff has also asserted that the UFT and its representative, defendant Marvin Reiskin and the Board and its District 20 Superintendent, defendant Vincent Grippo, acted in concert to

cause the disciplining, assignment to the District office or termination of teachers, including plaintiff, so as to deprive them of constitutional rights, including the right to equal protection of the laws. Plaintiff claims, *inter alia*, that defendants participated in a scheme to use the pretextual claim of absenteeism to violate his rights to accomplish the true objective of eliminating defendant, and other teachers, on account of their disabilities involving past drug use, dependency, or drug treatment, or other impermissible factors.

Plaintiff timely served his initial discovery demands on the City Defendants on November 27, 2002. The requests included document demands and interrogatories (see attachment hereto). The City Defendants requested an extension of time to respond to these requests to January 13, 2003. Counsel for the City Defendants subsequently advised me that their documents and responses would be delivered by February 10, 2003. Plaintiff wrote to the City Defendant's attorneys on numerous occasions (see letters of February 5, February 20, March 17, and May 5, 2003 attached; also see letter to Magistrate Go dated March 28, 2003, and conference directives.). The City Defendants attorney, Barbara G. Lifton, asserted in March that due to personal circumstances she did not know when the City Defendant's responses would be served. (See letter of Ms. Lifton to your Honor dated March 25, 2003).

Ultimately, a conference was scheduled by your Honor to address discovery issues on April 21, 2003. At the conference, Ms. Lifton advised the Court that she was in the process of putting together the documents responsive to plaintiff's document request, as modified with regard to time, except for the items that she claimed plaintiff should have directed to the defendant United Federation of Teachers ("UFT"). During the conference your Honor directed that Ms. Lifton identify to plaintiff, immediately following the conference, those items that she believed should have been directed to the UFT or which were otherwise objectionable.

After the conference, the only request that Ms. Lifton identified as one that should have been directed to the UFT was Plaintiff's Document Demand No. 53 which asked that the City defendants produce the Collective Bargaining Agreement in effect with the UFT during the period of the plaintiff's employment as a teacher. Ms. Lifton stated that City Defendants' objection was that "the UFT has already produced it". She also said that she had objections to Plaintiff's Document Demand No. 27 but failed to state what those objections were. I made subsequent attempts to determine if there were any more objectives, without success. Ms. Lifton finally stated that she would send me a letter listing her objection. She never did.

City Defendants were to produce the documents responsive to plaintiff's document requests and respond to plaintiff's interrogatories by May 7, 2002. Rather than producing the documents requested, City Defendants served plaintiff last week with a response to the plaintiff's November 27, 2002 document demand by objecting to most of the demands other than those that related to documents from the plaintiff's files and a few other documents produced with the initial disclosure. This after City Defendants had repeatedly claimed that they were assembling the documents which they claimed explained much of their delay. City defendants have to date not served a response to plaintiff's November 27, 2002 Interrogatories.

-2-

Depositions have been scheduled for next week in anticipation of compliance with discovery. However, City Defendants have continued to avoid compliance, producing little more than the files of plaintiff that were previously produced. The only additional documents produced by City Defendants last week other than a few additional documents relating to the plaintiff, were a few Chancellor regulations, which were mostly issued after the date that plaintiff's employment was terminated in June 2001. City Defendants have not even produced the By-laws of the Board of Education which the Chapter Leader's Handbook produced by the UFT reveals that this is an important document in defining the rights of teachers.

City Defendants' document response served four months after the original date for compliance, contains largely boiler plate objections to most of the document requests that the City defendants were to have complied with, and as such constitutes a willful and deliberate refusal to comply with discovery. As noted above, City Defendants have also still not yet served a response to Plaintiff's First Set of Interrogatories served almost five months ago. Despite my letter to City Defendants' attorney on May 5, 2003 again requesting compliance, to date, plaintiff has not received any further documents, nor have the City Defendants received a response to the Plaintiff's First Interrogatories .

City Defendants' refusal to comply with disclosure has seriously impacted on plaintiff's ability to prosecute his claims. Plaintiff scheduled depositions fully expecting that the City Defendants would comply as directed by May 7, 2003, even though such scheduling left plaintiff with little time to digest the documents to be produced by City Defendants. Plaintiff still does not have the required documents, nor does plaintiff even have the information requested in plaintiff's First Interrogatories.

The cut-off date for fact discovery has been set by the Court for June 13, 2003. However, due to no fault of the plaintiff, it now appears that completion of discovery by that date will be impossible, forcing plaintiff to request an extension of that deadline so that the documents and information requested can be obtained, and the need for any further document requests or interrogatories evaluated.

The following details the documents that have not been produced. Unless otherwise specified, City Defendants' in their response last week objected to the demands cited below without producing any documents. With respect to the information requested in the plaintiff's First Set of Interrogatories, the Court is respectfully directed to that document which is being submitted herewith.

**DOCUMENTS DEMANDED AND NOT PRODUCED**

Document Request No.13:  Requests documents reflecting Anthony DeLeo's job title, his employer, his qualifications,
and his relationship to Defendants.

Mr. Deleo was one of the individuals who conducted the investigation of the plaintiff.

Document Request No. 20: Requests additional documents relating to plaintiff as may be in possession of various individuals at the Board identified in the request.

**Specific Instances**

Document Request No. 24: Requests all documents relating to plaintiff's application for any and all teaching posts, including the teaching post advertised in circular # 342, on or about June 19, 2001, and including those documents generated and relied upon by Christina Tettonis who had responsibility over the posted position.

Plaintiff shortly before the termination of his employment applied and was rejected for a position with the Board which involved instructing on drug use as part of the Board's Drug & Alcohol Abuse Prevention Program.

Document Request No. 25: Requests all documents relating to the functions and powers of the Drug & Alcohol Abuse Prevention Program, and the duties and obligations of Christina Tettonis.

Document Request No. 27: Requests documents relating to any oral or written communications between Defendants or any of their employees and the UFT or any of their employees or representatives regarding:

a. the plaintiff,

b. Any person employed by Defendants in District 20 whose employment was terminated or who was subjected to any disciplinary or adverse employment action during the period of plaintiff's employment,

c. the placement, transfer, reassignment, or hiring, of any employee within District 20 during the period January 1, 1997 through the present.

d. plaintiff's drug dependancy or treatment, work performance, absences, or medical or psychological condition,

e. the use of drugs or participation in any program for the treatment or rehabilitation of persons suffering from drug dependencies or abuse by any employee of the Defendants during the period of Plaintiff's employment.

f. the issues relevant to this lawsuit.

Document Request No. 28: Requests documents responsive to Document Request nos. 21 through 27, in the possession, custody or control of various identified individuals at the Board of Education.

Document Request No. 29:   Requests documents involving schools in District 20 and teachers employed in District 20 containing directives, instructions, policy statements, and/or regarding, referring to, concerning, relating to and/or memorializing :

    a. absences by employees
    b. drug use or participation in drug treatment programs by Defendants' employees,
    c.  medical, family, or personal leaves.

City Defendants' response refers to their response to Document Request 42, which response was inadequate as is detailed under that response.

Document Request No. 30:    Requests documents relating to any complaints filed with respect to teachers in District 20 for the period January 1, 1997 to the present, and any requests for or any reports of any investigations conducted with respect to such teachers as a result of such complaints.

These documents are necessary in connection with plaintiff's discrimination, civil rights and conspiracy claims under 42 U.S.C. §1985.  Plaintiff is claiming that defendants UFT and Board through and by defendants Grippo and Reiskin, acted in concert in bringing about the disciplining, transfer, termination or adverse employment actions for impermissible reasons and then used pretextual reasons to justify the actions taken. Plaintiff has also asserted that the UFT and Reiskin, as part of that conspiracy, disclosed confidential communications from its members to Grippo as the District Superintendent. That information then resulted, in, *inter alia,*  the decision to take action against that teacher by asserting unrelated grounds that otherwise would not have been used against that teacher. Plaintiff's further allege that defendants conspired to conceal the true reasons for the employment action taken, such as in the case of plaintiff where defendants sought to eliminate him from the school system because of his past drug use, while claiming that the reason was excessive absenteeism.

Document Request No. 31:   Provide all complaints regarding alleged drug use or participation in drug treatment programs received with respect to teachers during the period January 1, 1997 to the present.

This information is sought in connection with plaintiff's claims under 42 U.S.C. §§1983, 1985, and 1986 and his discrimination and FMLA claims. As mentioned above, it is unlikely that the Board would use an employee's disability based on past drug use or drug treatment as the stated reason to terminate him as a teacher. These files are important to determine what happens to teachers where a claim of drug use or treatment surfaces or is alleged both in connection with plaintiff's claims of an improper policy, custom or usage, conspiracy, and discrimination.

Document Request No. 32:   Requests documents relating to any investigations regarding alleged drug use or participation in drug treatment programs with respect to any teachers in the New York City School District for the period January 1, 1997 to the present.

See discussion under Document Request No. 32 above.

Document Request No. 33:    Requests, with respect to Request Nos. 30 through 32 above, documents regarding adverse employment action or disciplinary action taken with respect to such teacher at any time after the complaint was received, and any documents sent to the teacher involved by the Board, the District Superintendent's office, or the school principal or assistant principal thereafter. The request also seeks documents received from the UFT or any of its employees or representatives responding to such letter, complaint, or employment action.

See discussion under Document Request No. 32 above.

Document Request No. 34:    Requests personnel files of the individual defendants and those of:

   h. Teachers within District 20 who were terminated or subjected to disciplinary or adverse employment action during the period January 1, 1997 to the present.
   I. Teachers within District 20 who had more than the maximum permissible numbers of absences in any academic year during the period September 1, 1997 through the present.
   J. Teachers in District 20 who assumed plaintiff's teaching duties after his reassignment and termination in 2001.
   K. Teachers in District 20 who were assigned to the District Office during period of plaintiff's employment.

   See discussion under Document Request No. 32 above. In addition, the number of absences of other teachers is critical since plaintiff has asserted, in part, that reliance on excess absences not only violated federal, state and city ant-discrimination laws under the circumstances presented, and the FMLA, but that it was in fact a pretext to give cover for the true impermissible reason, to wit, plaintiff's disability relating to a past drug dependency.  The documents thus far produced by the City Defendants give no indication as to how many absences will result in termination of an employee, and the Collective Bargaining Agreement between the UFT and the City speaks of the number of unexcused absences for which a teacher will be paid, but does not provide for when absences will support the termination of an employee.

   The files of teachers within District 20 who were assigned to the District Office are also important since reassignment to the District Office appears to have been one of the means used for affecting the terms and conditions of teachers for impermissible reasons. In this case, plaintiff was reassigned to the District Office where he was not assigned any work, even though he had been found fit by Board doctors to return to teaching. Files of the individuals who replaced plaintiff are clearly relevant to show that he was replaced by a person without such a disability.

Document Request No. 35: Requests attendance records of teachers in District 20 for the period January 1, 1997 to the present.

See discussion under Document Request No. 34 above

Document Request No. 36:    Requests personnel files of all teachers terminated for excessive absences during the period January 1, 1997 through the present.

See discussion under Document Request No. 34 above

**Defendants' Policies**


Document Request No. 38:    Requests documents containing directives, instructions and/or policy statements, , relating to:

    a. absences by teachers;
    b. drug use or participation in drug treatment programs by teachers;
    c.  medical, family, or personal leaves;
    d. termination of teachers;
    e. communications with the UFT or its representatives
    f. investigations of teachers;
    g. reassignment of teachers pending investigations or disciplinary or termination proceedings.
    h. referral of teachers to medical or psychological examinations;
    i. procedures relating to investigation, discipline, and/or employment action to be taken with respect to teachers suspected of use of illegal use of drugs, of drug abuse, or of drug addiction;
    j. removal of teachers from teaching assignments and/or assignment of teachers to district offices.
    k. teachers with mental or physical disabilities;
    l. equal employment opportunity
    m. training of supervisory personnel in connection with responding to or handling claims of drug abuse involving teachers.

Each of these policies is relevant to the plaintiff's discrimination, civil rights, and FMLA claims. Defendants merely referred to their response to Document Requests Nos. 41 and 42 which cite to a few regulations of the Chancellor which do not satisfy the request and most of which regulations are dated after the termination of plaintiff's employment in June 2001. Defendant produced regulation A-830 issued 7/01/01 relating to complaints of discrimination Bates stamped 0670 to 0680; C-603 issued 08/01/02 relating to responsibilities of absent employees and Bates stamped 0689 to 0695; and C-31 issued 10/16/02 relating to procedures for termination of licenses held by substitute teachers Bates stamped 0698 to 0703. The only documents produced that were issued before plaintiff was terminated are Chancellor's regulation C-601 relating to attendance and service Bates stamped 0681-0688 and C-770 relating to assignment of suspended personnel.

Document Request No. 39:    Requests documents describing the position, authority, and any rules and/or procedures to be followed by employees holding various positions or job titles at the

Defendant Board of Education.

Document Request No. 40:   Requests copies of all employee handbooks used or in effect during the years 1996 through to the present applicable to New York City School District teachers.

Document Request No. 41:   Requests copies of any policies prohibiting discrimination applicable to Board of Education employees during the period 1996 through to the present.

See discussion under Document Request No. 38 above.

Document Request No. 42:   Requests copies of any personnel policies, handbooks, agreements, guidelines, and any other documents that refer to or contain the Board's policies and procedures, in force during the period of plaintiff's employment, with respect to applications by teachers for "Excuse of Absence Without Pay and/or as Non-Attendance," "Excuse of Absence for Personal Illness," and/or other requests for absence, such as medical leave, and any and all policies in effect relating to the federal Family Leave and Medical Act ("FMLA"), including but not limited to the following:

- a) the criteria to be considered when an employee applies for leave;
- b) the required medical documentation;
- c) any relevant confidentiality requirements that must be adhered to regarding an employee's family, medical or psychological condition or circumstances, including, but not limited to drug dependancy or treatment;
- d) determining the period of medical leave entitlement;
- e) the circumstances in which a teachers absences could form the basis of a decision to rate that teacher's work performance "unsatisfactory";
- f) policies to ensure that an individual who is absent, including taking medical leave, does not suffer adverse work related consequences.

See discussion under Document Request No. 38 above.

Document Request No. 43:   Requests copies of any personnel policies, handbooks, agreements, guidelines, and any other documents that reflect, refer or relate to policies and procedures, in force during the period of plaintiff's employment, regarding the determination of performance ratings, the conduct of performance evaluations of teachers ,and the appeal procedures available, including but not limited to the following:

- a) any criteria or standards required to be utilized;
- b) how or to what extent absences are taken into account in deciding performance ratings;
- c) how or the extent to which the individual's medical and/or , psychological, condition or circumstances, including, but not limited to any disability is considered; and

d) when, how and the extent to which any medical or other periods of leave could be considered to negatively impact an individuals' rating.

See discussion under Document Request No. 38 above.

Document Request No. 44: Requests copies of any personnel policies, handbooks, agreements, guidelines, and any other documents pertaining to Defendant's policies, procedures, criteria, and standards in force during the period of plaintiff's employment, for reviewing and determining applications for advertised teaching posts and other job vacancies and postings.

See discussion under Document Request No. 38 above.

Document Request No. 45: Requests copies of any personnel policies, handbooks, agreements, guidelines, and any other documents regarding policies and procedures, in force during plaintiff's period of employment, with respect to termination and disciplinary procedures relating to teachers, including procedures for excessive absences and/or tardiness.

See discussion under Document Request No. 38 above.

Document Request No. 46: Requests copies of any personnel policies, handbooks, agreements, guidelines, and any other documents that contain and reflect policies and procedures, in force during plaintiff's period of employment, regarding teacher eligibility determinations and for placing teachers on the "Board's Ineligible Inquiry List", including the:

a) factors and criteria to be taken into account; and
b) persons charged with making such determinations;
c) appeal procedures;

See discussion under Document Request No. 38 above.

Document Request No. 47: Requests copies of any personnel policies, handbooks, agreements, guidelines, memorandum, or any other documents that reflect, refer or relate to policies and procedures, in force during the period of plaintiff's employment, regarding teachers alleged or known to be involved with the use of and illegal drugs, drugs which may result in addiction whether illegal or prescribed, teachers who are suffering from any drug dependencies, or teachers who are in or seeking treatment for treatment or rehabilitation for drug dependencies.

See discussion under Document Request No. 38 above.

Document Request No. 48: Requests copies of any personnel policies, handbooks, agreements, guidelines, and any other documents that reflect, refer or relate to policies and procedures in force during plaintiff's period of employment, to ensure the safeguard of Defendants' employees' constitutional, civil and statutory rights, including but not limited to rights under the United States or New York State constitutions, Title VII of the Civil Rights Act of 1964, the

Americans with Disabilities Act, the Family Medical Leave Act, the New York State Human Rights law, the New York City Human Rights law, and the federal Rehabilitation Act.

See discussion under Document Request No. 38 above.

Document Request No. 49:   Requests copies of any personnel policies, handbooks, agreements, guidelines, and any other documents that contain policies and procedures, in force during the period of plaintiff's employment, relating to complaints of discrimination, retaliation, harassment or hostile work environment,  or other work-related issues, including documents containing the names of the individuals and the relevant department(s) empowered to receive and investigate such complaints.

See discussion under Document Request No. 38 above.

Document Request No. 50:   Requests documents containing and reflecting  policies and mechanisms to ensure that the policies identified in response to Document Requests Nos. 38 through 49, are adhered to and adequately implemented,  including but not limited to the communication, dissemination, publication, and instruction to defendants' employees, including supervisory employees, and those in the human resources departments.

See discussion under Document Request No. 38 above.

Document Request No. 51:   Requests copies of all documents containing and relating to steps taken  during plaintiff's employment to monitor the effectiveness of the various policies and procedures previously identified in response to Document Request Nos. 38 to 49.

Document Request No. 52:   Requests copies of all documents, videotapes, audiotapes, books, manuals and other materials used to train managers and supervisors regarding the policies and procedures to be produced in response to Document Request Nos. 38 to 49.

See discussion under Document Request No. 38 above.

**Notice; Presence of Other Incidents and Complaints; Failure to Act**

Document Request No. 54 and 55:    Requests for the period from 1996 documents relating to lawsuits and/or complaints to any administrative agency involving charges of discrimination brought against the Board in which a present or former employee has alleged discrimination on the basis of disability, including but not limited to, a disability relating wholly or in part, to a drug use, treatment and/or dependancy, and including claims of retaliation and/or hostile environment based on such disability.

      These documents go both to the overall complaints of discrimination, the claims of conspiracy, and the civil rights claims asserting a policy, custom or usage.

Document Request Nos. 56 and 57:   Requests, for the period 1996 through to the present, documents relating to complaints commencing any lawsuits, and notices of claim, and any administrative complaints involving claims of discrimination brought against the Board in which a present, former or prospective employee of defendant Board of Education has alleged termination of or disciplinary action against a teacher for taking medical leave, and/or claims alleging retaliation and/or hostile environment for taking medical leave, including FMLA protected leave.

These documents are relevant to plaintiff's claims relating to violations of FMLA. In this case, the Board factored into the calculation of the number of absences the dates that the plaintiff took for medical leave. The plaintiff asserts that the Board fails to give employees required notice of their rights under the FMLA and has improperly taken adverse employment action against teachers who seek to invoke their rights under the FMLA under certain circumstances.

Document Request No. 58:   Requests complaints in any lawsuit or in administrative agency complaint or charge of discrimination brought against the Board by a present, former or prospective employee from 1996 to the present alleging a constitutional violation or denial of constitutional rights regarding conduct or actions taken by the Board against a teacher, whether such denial or violation is temporary or permanent, and including determinations regarding continued employment, assignment of duties, fitness to work, placement on the "Ineligible Inquiry List", and teacher ratings.

Document Request No. 59:   Requests employment files of teachers identified in Document Request No. 58 who had been investigated or against whom complaints had been received for drug use, drug addiction, or attendance at a drug treatment program during the period from 1996 to the present.

Document Request No. 60:   Requests documents relating to lawsuits or administrative agency charges brought against the Board by a present, former or prospective employee alleging a privacy rights violation during the period 1996 to the present.

Document Request No. 61 and 62:   Requests copies of documents regarding any written or verbal complaint(s) against the Board, or any of its employees and agents, from 1996 to the present, made by present, former or prospective employees, including verbal or written complaints of:
   a) discrimination based on disability, (including disability derived from a drug dependancy), or adverse employment action for taking medical leave, including FMLA-protected leave;
   b) constitutional rights violation;
   c) violation of right to privacy;

Document Request No. 63:   Requests documents regarding any written or verbal complaint(s) and grievances filed against the Board by present, former or prospective teachers in District 20 from 1996 to the present regarding alleged improper and/or discriminatory practice(s) and

procedures in the determination of performance ratings, reassignments of duties, disciplinary actions, fitness to work determinations, applications for advertised teaching positions, terminations of employment, and eligibility to teach in schools in the city of New York, and documents regarding investigation(s) in respect thereto or otherwise generated in response thereto.

Document Request No. 64:   Requests documents containing the following information regarding the teaching workforce within the New York City School District 20 from 1996 to the present:

- a) terminations of employment, including documents memorializing the reason(s) for termination;
- b) resignations or other separations of employment, including the reason(s) for the resignation/separation;
- c) individuals that were transferred to and from another teaching post and the reasons for the transfer; and
- d) the individuals that have taken and/or are currently on medical leave, including FMLA leave, disability leave, or any other extended form of leave, lasting more than one week in duration.
- e) Documents relating to, concerning, referring or consisting of any request by the UFT to place any person in a any position of employment with the Board of Education in District 20, Borough Supervisor's office in Kings County, or at the Board of Education, and any responses thereto by Defendants or any of their employees.

Document Request No. 65:   Requests documents regarding the composition of New York City School District's teaching workforce that are disabled, including disabilities derived in whole or in part, from a drug related dependancy.

Document Request No. 66:   Requests documents containing data regarding teacher absences for Community School District No. 20, and in particular, the number of absence(s) for each teacher in Community School District No. 20 for the years 1996 through to the present.

Document Request No. 67:   Requests documents containing the disciplinary measures taken against each individual teacher in Community School District 20, for absenteeism for the years 1996 through to the present.

Document Request No. 68:   Requests, for the period 1996 through to the present, documents containing the following information regarding teachers suffering from disabilities, within the New York City School District, including teachers asserting disabilities as the result of a drug dependancy:

- a) terminations of employment, including documents memorializing the reason(s) for termination;

  b)  resignations or other separations of employment, including the reason(s) for the resignation/separation;
  c)  individuals that were transferred to and from another teaching post and the reasons for the transfer; and
  d)  the individuals that have taken and/or are currently on medical leave, including FMLA leave, disability leave, or any other extended form of leave, lasting more than one week in duration.
  e)  the nature of the disability claimed.
  f)

### Documents Sought in Connection with Individual Defendants

Document Request No. 69: Requests copies of income tax returns for each of the individually named defendants in this lawsuit.

Document Request No. 70: Requests copies of documents that demonstrate the individually named defendants' net worth.

  Documents pursuant to Document Requests Nos. 69 and 70 relate to plaintiff's claims for punitive damages.

### General Documents

Document Request No. 71: Requests any statements made by the plaintiff relating to any matters asserted in the complaint or in the Answer to the Complaint.

  Defendants' response is unclear in that the claim that it has no responsive documents is "on information and belief".

Document Request No. 72: Requests any agreements, memoranda of understanding, or other documents involving, relating to, or referring to any agreements or understandings between the Defendants and the UFT regarding drug abuse, drug dependency, and/or drug treatment involving teachers.

  The response merely refers to a collective bargaining agreement attached to the UFT's document response.

Document Request No. 73: Requests documents that City Defendants used in preparing their Answer or which they intend to introduce at trial.

## DEFENDANT'S SHOULD BE COMPELLED TO COMPLY WITH THE OUTSTANDING DISCOVERY REQUESTS

  The broad scope of discovery contemplated under the Fed. R. of Civ. Proc. are even more liberally construed and interpreted in favor of a plaintiff cases involving claims of civil rights

violations and discrimination. In *Lineen v. Metcalf & Eddy, Inc.*, 1997 WL 73763 (S.D.N.Y., 1997) the court summarized this principle as follows:

> The Supreme Court has instructed that plaintiffs in employment discrimination lawsuits may employ "liberal civil discovery rules" to obtain "broad access to employer's records" in order to generate a statistical ) analysis to show the disparate impact of an employer's personnel policies. Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989). Accord Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 660 n.19 (11th Cir. 1993), reh'g en banc denied mem., 16 F.3d 1233 (11th Cir.), cert. denied, 115 S. Ct. 69 (1994); Abel v. Merrill Lynch & Co., 1993 WL 33348 at *2 (S.D.N.Y. Feb. 4, 1993). In a disparate treatment case, such discovery may also be important to develop data reflecting the intent behind the defendant's employment decisions and suggesting whether the defendant's justification for its challenged actions is pretextual. See, e.g., Taggart v. Time Inc., 924 F.2d 43, 46 (2d Cir. 1991); Hollander v. American Cyanamid Co., 895 F.2d 80, 84-85 (2d Cir. 1990) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-05 (1973)); Montana v. First Fed. Sav. & Loan Ass'n, 869 F.2d 100, 104 (2d Cir. 1989); Stanojev v. Ebasco Services Inc., 643 F.2d 914, 920-21 (2d Cir. 1981); Lieberman v. Gant, 630 F.2d 60, 68-69 (2d Cir. 1980). See also Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994)(noting significance of "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic ... on which an employer is forbidden to base a difference in treatment received systematically better treatment"); Abel, 1993 WL 33348, at *1. The fact that plaintiff is an individual alleging disparate treatment does not justify denial of access to information that may reflect patterns of discrimination. Both anecdotal and statistical evidence may be probative in this type of lawsuit. See, e.g., Taggart, 924 F.2d at 46 ("discrimination may be shown by direct evidence, statistical evidence, or circumstantial evidence"); Sumner v. U.S. Postal Serv., 899 F.2d 203, 210 (2d Cir. 1990); Stanojev, 643 F.2d at 921.
>
> In determining the limits of discovery, we must balance the plaintiff's need for the requested data against the burden imposed on the defendant. See, e.g., Scales v. J.C. Bradford & Co., 925 F.2d 901, 906-07 (6th Cir. 1991); Trevino v. Celanese Corp., 701 F.2d 397, 405-06 (5th Cir.), reh'g denied, 707 F.2d 515 (5th Cir. 1983; Mazzella v. RCA Global Communications Inc., 1984 WL 55541, at *8 (S.D.N.Y. Mar. 28, 1984); Zahorik v. Cornell Univ., 98 F.R.D. 27, 34-35 (N.D.N.Y. 1983). While balancing the relative needs and costs of discovery, we are mindful that a "'plaintiff who must shoulder the burden of proving that the [defendant's explanations] are pretextual should not normally be denied the information necessary to establish that claim.'" Palmer v. Reader's Digest Ass'n, Inc., 122 F.R.D. 445, 446 (S.D.N.Y. 1988)(quoting Marshall v. Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978)). Accord In re Western Dist. Xerox Litig., 140 F.R.D. 264, 269 (W.D.N.Y. 1991); Flanagan v. Travelers Ins. Co., 111

F.R.D. 42, 47 (W.D.N.Y. 1986). See also Audrey v. United Parcel Serv., 798 F.2d 679, 684 (4th Cir. 1986), cert. denied, 480 U.S. 934 (1987); Trevino v. Celanese Corp., 701 F.2d at 405-06.

Accord, See *Khan v. Sanofi-Synthelabo, Inc.*, 2002 WL 31720528 (S.D.N.Y., 2002).

The documents sought are discoverable under plaintiff's discrimination claims. Clearly, the Defendants acts with respect to other persons within the class are relevant and discoverable, since such comparative information aids the plaintiff in the development of the case and establishing pretext. See *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 52 L.Ed 2d 396, 97 S.Ct. 1843 (1977); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05, 36 L.Ed. 2d 668, 93 S. Ct. 1817 (1973) *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990). In discrimination cases "... [L]iberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their claims. *Wards Cove Packing Co., Inc. v. Atonio*, 109 S.Ct. 2115, 490 U.S. 642, 104 L.Ed.2d 733, 490 U.S. 642, *657, 109 S.Ct. 2115, **2125 (1989) . Also see *Ladson v. Ulltra East Parking Corp.*, 164 F.R.D. 376 (S.D.N.Y.,1996).

In *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2nd Cir, 1990). The Second Circuit reversed the lower court's refusal to require to the defendants to produce company wide documentation holding that:

> Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive. ...
>
> Because employers rarely leave a paper trail--or "smoking gun"-- attesting to a discriminatory intent, see Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464-65 (2d Cir.1989) (citing cases); Dister v. Continental Group, Inc., 859 F.2d 1108, 1112 (2d Cir.1988), disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer.

The documents requested are also important in connection with plaintiff's conspiracy claims since it is well recognized that "the facts surrounding a conspiracy claim are usually not available to the plaintiff. "Thus, '[c]onspiracies are seldom proven with direct evidence'". Long Island Lighting Co. v. Cuomo, 666 F. Supp. 370, 426 (N.D.N.Y. 1987) (citation omitted), vacated in part on other grounds, 888 F.2d 230 (2d Cir. 1989)". *Townes v. N.Y.C.*, Dist. Ct. (E.D.N.Y., 1996)(Sifton J.)

Similarly Plaintiff's document requests properly seek documents that relate to other

teachers in the protected class, and which may establish City Defendants' policy, practice, knowledge , indifference, custom or usage to constitutionally or statutorily prohibited conduct. See *Monell v. Dept. of Social Serv. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The withholding of these documents would leave plaintiff with no meaningful method by which to prove many of his federal and state claims or would seriously and unfairly hamper plaintiff in that effort.

**CONCLUSION**

It is respectfully requested that City Defendants be directed to comply with plaintiff's outstanding document requests as identified herein, that the Court direct that depositions be rescheduled pending compliance, and that the end-date for fact discovery be extended to provide plaintiff with an adequate period of time to complete discovery, including the service of any additional discovery demands that may be necessary after Defendant's compliance with outstanding discovery..

Thank you for your consideration.

Respectfully,

//s//

Mark H. Bierman
(MHB-4696)